CENTRAL TRUST CO. OF NEW YORK v. EAST TENNESSEE, V. & G. RY. CO.

(Circuit Court, D. Kentucky.   January 17, 1894.)

No. 6,247.

1. RECEIVERS—SUITS IN OTHER COURTS—INJUNCTION.
The permission given by the third section of the judiciary act of 1887-88 to sue receivers of federal courts for acts or transactions of theirs in carrying on the business connected with the property, without leave of the appointing court, is not restricted to the courts having jurisdiction of the receiver and the property, or to the federal courts generally, but extends to any court of competent jurisdiction, and the appointing court has no power to enjoin the bringing of such suits in any other than the federal courts.   Railway Co. v. Johnson, 14 Sup. Ct. 250, followed.

2. SAME—GARNISHMENT PROCEEDINGS, ETC.
Garnishment proceedings are not suits against the receiver for "any act or transaction of his," within the meaning of the statute, and the appointing court may enjoin the bringing of such proceedings, as well as suits upon causes of action originating before the receivership, and all other suits not arising from some act or transaction of the receiver in carrying on the business connected with the property in his charge.

3. SAME—REMOVAL OF RECEIVERS.
The statute does not affect the right of the receivers to remove from the state courts suits involving more than $2,000.   Such right is based on the fact that the suit is against a receiver appointed by a federal court, and is therefore one arising under the constitution and laws of the United States.

In Equity.   Bill by the Central Trust Company of New York against the East Tennessee, Virginia & Georgia Railway Company. Heard on a rule for attachment for contempt in violating an injunction.   Rule discharged, and injunction modified.

Statement by LURTON, Circuit Judge:

The receivers appointed in this cause have, by petition, prayed for an attachment against certain persons for contempt, in bringing suits in other courts against them as receivers, and without leave of this court, in respect to certain acts and transactions while carrying on the business of operating the railway line committed to their custody by this court.   The receivers rely upon an injunction, granted by Judge LURTON, which is in the following language: "On application, and upon the petition of the receivers heretofore appointed in these causes, and for good cause shown, it is ordered that all suits brought against the said receivers herein for damages to person or property, or incident to their duties as such receivers, shall be brought in some one of the federal courts, or by intervention in this case."   The defendants answer, and justify their action under the third section of the act of March 3, 1887, as corrected by the act of August 13, 1888.

Edward Colston, E. F. Trabue, and G. H. Henderson, for receivers. Humphrey & Davis and Stone & Sudduth, for respondents.

Before TAFT and LURTON, Circuit Judges, and BARR, District Judge.

LURTON, Circuit Judge.   The possession of property in the hands of a receiver, appointed in the exercise of a general equity jurisdiction, is the possession of the court.   The receiver is but the agent of the court, appointed to hold the property until the court shall determine ownership, or how the proceeds of its sale shall be

divided among those interested therein. The general doctrine is thus stated in 2 Story, Eq. Jur. (13th Ed.) 833a, where it is said, speaking of a receiver:

"For his possession is deemed the possession of the court, and the court will not permit itself to be made a suitor in a court of law. The proper and usual mode adopted under such circumstances is for the party claiming an adverse interest to apply to the court to be permitted to come in, and be examined pro interesse suo. He is then allowed to go before the master, and to state his title, upon which he may, in the first instance, have the judgment of the master, and ultimately, if necessary, that of the court. And where the question to be tried is a pure matter of title, which can be tried in an ejectment. the court, from a sense of convenience and justice, will generally authorize such a suit to be brought, taking care, however, to protect the possession by giving proper directions."

In Davis v. Gray, 16 Wall. 218, the supreme court of the United States, on this subject, said:

"Money or property in his hands is in custodia legis. He has only such power and authority as are given to him by the court, and must not exceed the prescribed limit. The court will not allow him to be sued touching the property in his charge, nor for any malfeasance as to the parties, or otherwise, without its consent; nor will he permit his possession to be disturbed by force, nor violence to be offered to his person, while in the discharge of his official duties. In such cases, the court will vindicate its authority, and, if need be, will punish the offender by fine and imprisonment, for contempt. Where property in the hands of a receiver is claimed by another, the right may be tried by proper issues at law, by reference to a master, or otherwise, as the court, in its discretion, may see fit to direct."

In Barton v. Barbour, 104 U. S. 126, the whole question of the effect of a judgment against a receiver, obtained in a suit prosecuted without leave of the court appointing him, was elaborately discussed, and a judgment thus obtained held to be absolutely void, for want of jurisdiction in the court rendering it. Leave of the court having custody of the property operated by the receiver was held essential to jurisdiction. The fact that the liability arose from the negligence of the servants of a receiver, while operating a railway as receiver, was held in no way to take the case out of the general rule. On this subject that court said:

"We do not perceive how the fact that the receiver, under the orders of the court, is doing the business usually done by a common carrier makes his case any exception to the rule under consideration. It was said by this court in Cowdrey v. Railroad Co., 93 U. S. 352, that 'the allowance for goods lost in transportation, and for damages done to property whilst the road was in the hands of the receiver, was properly made.' 'The earnings received were as much chargeable with such loss and damage as they were chargeable with the ordinary expenses of managing the road. The bondholders were only entitled to what remained after charges of this kind, as well as the expenses incurred in their behalf, were paid.' This puts claims against the receiver, in his capacity as a common carrier, on the same footing, precisely as the salaries of his subordinates, or as claims for labor and material used in carrying on the business. If a passenger on the railroad, who is injured, in person or property, by the negligence of the servants of the receiver, can, without leave, sue him to recover his damages, then every conductor, engineer, brakeman, or track hand can also sue for his wages without leave. To admit such a practice would be to allow the charges and expenses of the administration of a trust property, in the hands of a court of equity, to be controlled by other courts, at the instance of impatient suitors, without regard to the equities of other claimants, and to permit the trust property to be wasted in the costs of unnecessary litigation.

"Such is not the course and practice of courts of equity in administering a trust estate. The costs and expenses of a trust are allowed by the court, upon a reference to its own master. If the adjustment of the claim involves any dispute in regard to the alleged negligence of the receiver, or any other fact upon which his liability depends, or in regard to the amount of the damages sustained by a party, the court, in a proper case, in the exercise of its legal discretion, either of its own motion, or on the demand, of the party injured, may allow him to sue the receiver in a court of law, or direct the trial of a feigned issue, to settle the contested facts. The claim of the plaintiff, which is against the receiver for a personal injury sustained by her while traveling on the railroad managed by him, stands on precisely the same footing as any of the expenses incurred in the execution of the trust, and must be adjusted and satisfied in the same way. We therefore think that the demand of the plaintiff is not of such a nature that it may be prosecuted by suit, without leave of the court." 104 U. S. 130, 131.

This same general principle has been frequently announced in the highest courts of most of the states of this Union. Some of these cases we cite: Robinson v. Railway Co., 66 Pa. St. 160; Skinner v. Maxwell, 68 N. C. 400; Railway Co. v. Smith, 19 Kan. 229; Hazelrigg v. Bronaugh, 78 Ky. 62; Chafee v. Quidnick Co., 13 R. I. 442; Payne v. Baxter, 2 Tenn. Ch. 517; Olds v. Tucker, 35 Ohio St. 584.

Such was the state of the law when congress passed the act of March 3, 1887, corrected by the act of August 13, 1888, and known as the "Judiciary Act." The third section of that act is as follows:

"That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

Whether it was the intention of congress to permit receivers, appointed by, and accountable to, United States courts, to be sued with respect to acts and transactions as such receivers in courts of other jurisdictions, is by no means clear. Under the law as it stood, the court having custody of the property, pendente lite, had exclusive jurisdiction of all suits affecting such property, and drew to itself complete jurisdiction with respect to all the acts and transactions of its receiver, in maintaining or operating property so sequestrated. It was just as much a contempt of court to institute a suit affecting such property, or its custodian as such, in the court of his appointment, without previous leave of court, as it was to bring such suit in another jurisdiction. A judgment against the receiver is a judgment against the receivership. It is a judgment affecting the property, and to be paid therefrom. To properly administer a sequestrated property, the liabilities should be determined in one cause, and the claims ranked, and the property marshaled and distributed according to legal or equitable priorities.

The act might well have been construed as only permitting suits in the court having jurisdiction of the property and the receiver. This would have secured to the suitor the right of jury trial, according to the usual course of the court, where the demand was of legal character. At the same time, such judgment would have been

subject to the equitable jurisdiction of the court, and be given its proper rank in the distribution of the property. There is much force in the argument that, in view of the previous exclusive jurisdiction of the court appointing the receiver over him and over the sequestrated property, a construction ought to be given this act which would have preserved the equitable jurisdiction of the circuit courts over property in custodia legis, and over suits affecting it. We, however, feel precluded from now placing such a construction upon the act, in consequence of the decisions of the supreme court of the United States in McNulta v. Lochridge, 141 U. S. 327, 12 Sup. Ct. 11; Railway Co. v. Johnson, (decided Jan. 3, 1894, and not yet officially reported,) 14 Sup. Ct. 250.

It is true, as contended, that the construction now insisted upon does not seem to have been presented or passed upon in either of the opinions of that learned court. The fact, however, remains that, in the first case, a judgment against the receiver, obtained in a suit in a state court, brought without leave of the court appointing the receiver, was recognized as valid. A similar judgment was held void, before the passage of the act of 1887, in Barton v. Barbour, supra.

The case of Railroad Co. v. Cox, 145 U. S. 603, 12 Sup. Ct. 905, has no bearing on this point. The suit was at law, and was brought without leave of the court, but it was brought in the court which, under ancillary proceedings, had appointed the receiver sued, and which had jurisdiction over the property.

In the case of Railway Co. v. Johnson, supra, the suit was commenced in a state court, against a receiver appointed by a circuit court of the United States. Subsequently, the railroad company was joined as a defendant; the receiver in the meantime having been discharged, and the property of the company restored to its possession. There was a judgment against the receiver and the company, affirmed on appeal by the supreme court of Texas. 13 S. W. 463. Among other questions decided, the court, in an opinion by Chief Justice Fuller, said,

"By section 3 of the act of March 3, 1887, c. 373, (24 Stat. 552,) as corrected by the act of August 13, 1888, c. 866, (25 Stat. 433,) every receiver appointed by a court of the United States may be sued, in respect of any act or transaction of his in carrying on the business connected with the property, without the previous leave of the court by which such receiver was appointed. Necessarily, such a suit may be brought in any court of competent jurisdiction, and proceed to judgment accordingly. This suit was so brought."

Assuming, therefore, that, under the act of 1887, it was permissible to sue the receivers in any court having jurisdiction of the person of the receiver and of the subject-matter, we are brought to the consideration of the question as to whether such liability to suit could be limited or controlled by the injunctive process of the circuit court appointing the receiver.

The writer of this opinion entertained, originally, the view that the intent of congress was only to permit suit in the court where the property sought to be affected by the suit was sequestrated. This view was entertained upon two grounds:

1. By the construction above referred to as to the purpose of congress, as indicated in the affirmative portions of section 3.

2. By reason of the effect to be given to the proviso of that section, which is in these words:

"But such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

It seems that if such suits, so brought without leave, were to be, and remain, "subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice," they should be brought within the court having the right to exercise such equitable jurisdiction over the suit. Without elaborating these views, it is sufficient to say that they were deemed to justify an injunction against suits in courts of other jurisdictions. Like views were entertained by Judge Taft, who now joins in this opinion; he having made an order of like character in the case of Thomas v. Cincinnati, New Orleans & Texas Pacific Railway Co.

Upon full consideration, we are now led to the conclusion that the injunction was improvidently granted in so far as it may be, and has been, construed as restraining suits in any court having jurisdiction of the parties and of the subject-matter, where the action originates in an "act or transaction" of the receiver "in carrying on the business connected with such property."

If that act authorized a suit against a receiver in a state court, without leave of the court appointing the receiver, in respect to a liability incurred while carrying on the operation of a railroad as a receiver under a decree of a United States circuit court, as was held in McNulta v. Lochridge, supra, then a right of suit thus conferred by congress cannot be restrained in advance of its exercise. This would be, in effect, to nullify the act of congress, and, therefore, in excess of jurisdiction. The power given by the proviso must not be so construed as to authorize the courts to prevent that which congress has expressly provided may be done. That it was intended by congress that some meaning should be attached to the very significant proviso contained in section 3 is most obvious. It was not intended that the right to litigate with the receiver in any court should be an unrestrained right. Whether the proviso should be limited so as to give the court appointing the receiver power upon equitable grounds, and upon special application, to restrain proceedings in a pending suit, brought without leave of the court, or whether, after judgment, the court should exercise its equitable jurisdiction by inquiry into the judgment, in order to determine its justice, or its place and rank in the distribution of the property out of which it is to be paid, are questions which need not now be settled.

A wide difference of opinion has been entertained as to the power of the court over judgments obtained against the receiver in courts other than that appointing the receiver. Central Trust Co. v. St. Louis, etc., Ry. Co., 40 Fed. 426; Eddy v. Wallace, 1 C. C. A. 435, 49

Fed. 801; Missouri Pac. Ry. Co. v. Texas Pac. R. Co., 41 Fed. 311. In the two cases first cited it was held that such judgments were conclusive. In the case reported in 41 Fed. it was held that it was within the power of the court, when such judgments were filed in the case in which the fund was being distributed, to look into them, and allow the whole, or half, or any part, as justice might require. The latter view seems to have been entertained by Mr. Justice Jackson, for, while judge of this circuit, he made an order in this cause, which has not been revoked, requiring all judgments in other courts, obtained in suits prosecuted without leave of the court, to be filed by intervening petition in the main cause, together with a full bill of exceptions, showing the evidence upon which the judgment rested. That the judgment is conclusive, so far as to be regarded as a judicial ascertainment of liability, and of the amount, is probably the better view. Speaking of the effect of the proviso, the learned chief justice, in the case of Railway Co. v. Johnson, supra, said that "the right to sue without resorting to the appointing court, which involves the right to obtain judgment, cannot be assumed to have been rendered practically valueless by this further provision in the same section of the statute which granted it."

It is enough, for a decision of the question now before us, to say that we are of opinion that the injunction against bringing suits without leave of the court should be modified, so as not to restrain suits growing out of acts and transactions in respect to the carrying on of the operations of the railroad. The act does not affect suits not having their origin in the operation of the railroad by the receiver. With respect to all contracts and causes of action originating before the receivership, and all not arising out of an alleged liability of the receiver to the suitor, for some act or transaction of the receiver while carrying on the business of a common carrier, the injunction will stand.

Garnishment proceedings are not suits against the receiver, for any act or transaction of his, and such claims must be prosecuted in the manner heretofore settled by order in this cause. Such claims, filed with the commissioner appointed to hear them, can be thus more speedily and economically determined than by the institution of regular suits. A proceeding for garnishment purposes is an equitable seizure of the funds and property within the custody of the court. The principle governing such seizure is clearly settled by the decision in Ex parte Tyler, 149 U. S. 182, 13 Sup. Ct. 785.

The right of the receivers to remove any suit, brought in a state court, where the sum involved is $2,000, seems to be unaffected by the act of 1887. The right of removal, in such cases, rests upon the fact that the suit is one against a receiver appointed by a court of the United States, and is therefore one arising under the constitution and laws of the United States. Railroad Co. v. Cox, 145 U. S. 603, 12 Sup. Ct. 905; Buck v. Colbath, 3 Wall. 334.

The pending applications for leave to bring suits in other courts are refused. The parties so applying will not be affected by the injunction as modified, and they can exercise their statutory right of suit if they see fit.

A decree will be drawn up in accordance with this opinion, and the rule discharged. The costs will be paid by the receivers, out of the funds in their hands.