[No. 2518. Decided September 10, 1897.]

GEORGE D. BENNETT *et al.*, *Appellants*, v. NORTHERN PACIFIC RAILROAD COMPANY AND ANDREW F. BURLEIGH, *Receiver*, *Respondents*.

#### ACTION AGAINST RECEIVER — LEAVE TO SUE.

An action against a receiver of a railroad company appointed by a court of the United States, to quiet title to lands claimed by plaintiff under the homestead laws of the United States, but which had been subsequently patented to the railroad, cannot be maintained without leave of the court appointing the receiver, as the bare allegation in the complaint that the receiver claims some interest in the lands adverse to plaintiff will not bring the case within the provisions of 25 U. S. St. at Large, p.436, § 3, permitting suit against any such receiver without the previous leave of the court in which he was appointed, when the suit is "in respect of any act or transaction of his in carrying on the business connected with such property."

Appeal from Superior Court, Chehalis County.—Hon. MASON IRWIN, Judge. Affirmed.

*W. H. Abel (Henry C. Whitney*, of counsel), for appellants.

*Fred M. Dudley (Crowley & Grosscup*, and *Dudley, Bunn & Dudley*, of counsel), for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by the appellants against the Northern Pacific Railroad Company and Andrew F. Burleigh, receiver thereof, alleging in their complaint that they had settled upon, improved and cultivated the lands in question in compliance with the provisions of the homestead laws of the United States, and that they offered to make preliminary homestead entries of said lands respectively before the register and receiver of the land office at Olympia, Washington, the same be-

ing the land office of the district in which the lands under consideration are situated; that they tendered the necessary proofs and fees, but that the register and receiver, acting under a mistake of law, refused and rejected their several applications, giving as a reason for so refusing and rejecting them that the lands were embraced in the grant of lands to the Northern Pacific Railroad Company under a joint resolution of Congress of May 31, 1870, and that they were a part of said grant. The complaint alleges the issuance and deliverance to the respondent, the Northern Pacific Railroad Company, by the executive branch of the United States government, of patents for said lands, on October 29, 1895; alleges that the Northern Pacific Railroad Company claimed an interest in the said lands adverse to that of plaintiffs severally, and prayed that such adverse claim of interest may be determined by the court; that the title of the plaintiffs may be severally declared valid and quieted as against defendants, and that plaintiffs' right of possession be thereby assured, and that the defendants may be decreed to have no estate in the premises and be enjoined from in any manner injuring or hindering plaintiffs in their possession. To this complaint, which was the second amended complaint, the respondents interposed a demurrer, upon the grounds among others that the complaint did not state facts sufficient to constitute a cause of action against the defendants or either of them, because no leave of court was obtained to bring this action, nor to sue said receiver. This demurrer was sustained. Judgment was entered dismissing the complaint, and from said judgment appeal is taken to this court.

The first point in the brief of the respondents is that the court was without jurisdiction to try an action against the receiver of the Northern Pacific Railroad Company

or the property in his custody without leave of that court
by which the receiver was appointed, and a number of
cases are cited to sustain this contention.   It has been the
well established law in this country that property which
was in the hands of a receiver was *in custodia legis;* that
the receiver was but an officer or arm of the court, and
that it would lead to confusion and to the clashing of
jurisdictions for any court to assume jurisdiction over prop-
erty which was in the custody and under the supervision
and control of another court; and hence courts have re-
fused to assume such jurisdiction excepting by leave of
the court which appointed the receiver.   Such has been
especially the well established law since the decision in
the cases of *Barton v. Barbour,* 104 U. S. 126, and *Davis
v. Gray,* 16 Wall. 203.   Under these decisions it is evi-
dent that this action could not have been legally brought
without the consent of the court which appointed the re-
ceiver.

This general rule, however, is not disputed by the ap-
pellant, but he contends that since the passage of the act
of Congress approved August 13, 1888 (25 U. S. St. at
Large, p. 436), giving leave to sue the receiver appointed
by the federal court, the rule is no longer in force.   Sec-
tion 3 of the law upon which the appellant relies is as fol-
lows:

" That every receiver or manager of any property ap-
pointed by any court of the United States may be sued
in respect of any act or transaction of his in carrying
on the business connected with such property, without the
previous leave of the court in which such receiver or man-
ager was appointed; but such suit shall be subject to the
general equity jurisdiction of the court in which such re-
ceiver or manager was appointed, so far as the same shall
be necessary to the ends of justice."

It is difficult to tell exactly what is meant by this sec-

tion of the law and by the qualification that " such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed." If the law had been to the effect that the judgment resulting from such suit should be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, there would have been no chance for confusion in the jurisdiction of the courts; for in any case, to preserve the estate and rights of all parties in interest, whether parties in the court in which the receiver was appointed or parties to the action in the court wherein the receiver is sued independently, it must necessarily follow that the court which appointed the receiver, and in whose custody the property rests, must be the court which supervises or directs the payment of the judgment obtained in the other court. In other words, the judgment of the other court simply establishes a lien and the court appointing the receiver directs its enforcement. But this law, as we have before indicated, provides that the suit itself shall be subject to the general equity jurisdiction of the appointing court.

In *Central Trust Co. v. East Tennessee, V. & G. Ry. Co.*, 59 Fed. 523, the court was of the opinion that the intention of the act was only to give a right to sue the receiver in the court which appointed him without first obtaining the leave of said court; that that was the court which sequestrated the property of the estate, and the only court which could have jurisdiction over it. But after expressing its views in this regard, the court says that it was prevented from giving this construction to the law by reason of the decision of the United States supreme court in the case of *McNulta v. Lochridge*, 141 U. S. 327 (12 Sup. Ct. 11), in which case it was decided that suit might be brought in a court other than the court appointing the

receiver, against the receiver, without consent of the appointing power; and this is the case which it is insisted by appellants controls this question. It is insisted that in that case the supreme court of the United States, as well as the supreme court of the state of Illinois, held that the power to sue was unlimited and that, in substance, no distinction could be drawn between the different kinds of actions which were entitled under the law above quoted to be brought without leave of court.

But an examination of these cases satisfies us that it was not the intention of the supreme court either of Illinois or of the United States to prescribe such an unlimited application of the rule. It must be borne in mind that the question in this case is whether the complaint in this action states any act on the part of the receiver which is an act or transaction of his in carrying on the business connected with the property. The action in *McNulta v. Lochridge, supra,* was an action for personal damages, Thomas Molohon and Mary E. Molohon having been killed by an engine while attempting to cross the track of the Wabash, St. Louis & Pacific Railway Company, and the administrator Lochridge brought the action for damages, which resulted in a verdict for $6,000. This judgment was afterwards affirmed in the appellate court. At the time of the accident one Thomas Cooley was acting as receiver of the Wabash, St. Louis & Pacific Railway Company. Cooley afterwards resigned and before the action for damages was brought, McNulta was appointed receiver. It seems to have been conceded in that case that that was an action or transaction by the receiver which fell within the provisions of the law, but the contention was that the action could not be brought against the receiver who had been appointed after the alleged damages had been sustained, and that an action at law could not be maintained against

one receiver for the tort of his predecessor; and further, the acts of the receiver or his servants were not the acts of the corporation, nor could they control either the receiver or his employees. The court held that an action at law could be maintained against a receiver for the torts of his predecessor in the same receivership, and that a receiver of a railroad company who was exercising the franchises of such company and operating its road in his official capacity was amenable to the same rules and liabilities that were applicable to the company when it was operating the road by virtue of the same franchises. The principal discussion was on the question of the continuing liability of the receiver. The act of Congress which we have been discussing was discussed and construed with reference to this question, and while the supreme court of the United States, in affirming the judgment in a very brief opinion, uses the words attributed to it by the appellants, viz.: "As the right given by the statute to sue for the acts and transactions of the receivership is unlimited, we cannot say that it should be restricted to causes of action arising from the conduct of the receiver against whom the suit is brought, or his agents," the concluding sentence, as well as the whole opinion, shows that the word " unlimited " was applied to, and that the limitation considered in the case was the limitation applied to, the receiver so far as the duration of his appointment was concerned. It could not have been the intention of the court to have laid down the rule that this law provided for actions unlimited against the receiver, for in *Re Tyler*, 149 U. S. 164 (13 Sup. Ct. 785), the contrary doctrine was announced and a limitation placed upon the provisions of the act; and, while the circumstances in that case were not similar to those in the case at bar, the decision shows that it was not the opinion of the court

that the act provided for unlimited actions against the receivers.

The case of *Central Trust Co. v. Railway Co., 'supra*, was an action by persons having claims against the receivers which they refused to allow, and as a matter of course would fall within the plain provisions of the act of Congress which is under consideration. And so with the case of *McNulta v. Lochridge*. That was an action for damages which were sustained by the alleged negligence of the servants of the company in operating the road under the supervision of the receiver, and the act of the receiver being the act of the company it of course fell within the provisions of the statute.

The case of *Missouri Pacific Ry. Co. v. Texas Pacific Ry. Co.*, 41 Fed. 311, cited by the appellants, seems to us not to be in point in any manner whatever. There it was simply held that a judgment rendered in an action in a state court against a receiver appointed in an action in a circuit court instituted prior to the passage of the judiciary act and which had been brought without the consent of the court appointing such receiver, was not conclusive against him but was subject to the equity jurisdiction of the court appointing him. There is nothing in the report of the case which would indicate what construction the court would place upon the law under discussion.

*Eddy v. Lafayette*, 49 Fed. 807, is an action for damages through setting fire to premises by means of sparks from an engine, and without any question falls within the statute.

These are all the cases cited by the appellants and all we have been able to find on the subject, and we do not feel that they in any way touch the real question at issue in this case.

The respondents in support of their demurrer cite an

opinion of this court in *Brown v. Rauch*, 1 Wash. 497 (20 Pac. 785). There it was held by the court, through Judge BURKE who wrote the opinion, that a receiver could not be sued except upon leave of the court appointing him first obtained. This was an action to recover for services claimed to have been rendered to the receiver as such, and while this case was decided in January, 1889, several months after the passage of the statute to which we have referred, we are satisfied that the statute was not called to the attention of the court in that case, for it is not referred to and the case is decided upon the authority of *Barton v. Barbour, supra*, and old cases which had been adjudicated prior to the enactment of the statute, and it cannot be, we think, considered authority in this case.

*Swope v. Villard*, 61 Fed. 417, however, was a case where a stockholder of a corporation which was in the receiver's hands attempted to sue upon a cause of action in favor of the corporation, upon the refusal of the receiver to sue upon the stockholder's request, without showing that he had asked the court which appointed the receiver to direct him to sue; and the circuit court of New York decided that the court had no jurisdiction to try the case, the consent of the court which appointed the receiver not having been obtained. The court in that case had under discussion the act of August 13, 1888, and after quoting its provision, says:

" No act or transaction of the receivers is involved in this suit unless it be their refusal to sue as requested. In my opinion, that is not an act or transaction of theirs in carrying on the business, within the meaning of this statute."

Certainly if the refusal to sue for the benefit of a stockholder was not an act or transaction within the meaning of the statute, the bare allegation in a complaint that re-

spondents claim some title to this land would not be an act or transaction within the meaning of the statute.

*Comer v. Felton,* 61 Fed. 731, also decides that, in a case where it was alleged that the receiver was unduly holding possession of certain property, such an act did not fall within the statute. "Defendant Comer," said the court after quoting the statute, " has been put in possession of the premises involved by a decree of the circuit court, and a suit instituted in a court of law without leave of the court appointing him was a gross contempt;" citing *Re Tyler, supra,* and *Central Trust Co. v. Railway Co., supra.* It has not been called to our attention that these cases have been appealed to the supreme court of the United States, or that the judgments have been modified, and, being federal courts directly controlled by congressional acts, their decisions are worthy of consideration and respect.

In so far then as the authorities go, the act restricts actions which can be brought without consent to some act or transaction of the receiver, and if we were called upon to construe the act unaided by authority, it seems to us that the plain language of the act would exclude the idea that it provides for unlimited actions against receivers. Had it been the intention of Congress to provide for such unlimited actions, it would have only been necessary to say that every receiver appointed by a court of the United States may be sued without the previous consent of the court by which such receiver was appointed.

In this case it does not seem from the complaint that there was any act or transaction of the receiver whatever in relation to carrying on the business connected with the property. The lands granted to the Northern Pacific Railroad Company by act of Congress are not in any way necessarily connected with the operations of the road or the carrying on of its business. They were a subsidy

granted to the company, and are separate and distinct from the operation of the road.   The bare allegation that the respondents claim some interest in the lands is not sufficient to bring the appellants within the privileges of the statute. A limitation has been placed upon these actions by the very words of the statute and some effect must be given to them, and if any effect whatever is to be given it would exclude the jurisdiction in this case, under the barren allegations of the complaint.

It might be possible, and that is a question which we do not now decide, that in consideration of the well-known history of the land department of the railroad company and the fact that it is engaged in leasing and selling these lands, an allegation might be framed in relation to the actions or transactions of the receiver which would bring the case within the requirements of the statute; but it is evident to us that such allegations have not been made. The court then not having jurisdiction to entertain this cause against the receiver, the demurrer was properly sustained.   This renders a discussion of the other points involved in the cause unnecessary.

The judgment is affirmed.                '

SCOTT, C. J., and ANDERS and REAVIS, JJ., concur.