CENTRAL TRUST CO. OF NEW YORK v. WHEELING & L. E. R. CO.

(Circuit Court, N. D. Ohio, E. D. May 11, 1911.)

No. 7,603.

1. RECEIVERS (§ 174*)—SUITS AGAINST RECEIVERS—AUTHORITY TO SUE.

Prior to Act Cong. March 3, 1887, c. 373, § 3, 24 Stat. 554, as amended by Act Aug. 13, 1888, c. 866, § 3, 25 Stat. 436 (U. S. Comp. St. 1901, p. 582), authorizing suits in certain cases against receivers appointed by federal courts without first obtaining leave of the court appointing them, a receiver appointed by a federal court could not be sued in a state for any purpose without the consent of the appointing authority.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 174.*

Actions by or against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

**2.** Receivers (§ 181*)—Action Against Receiver—Leave of Court—Garnishment.

Act Cong. March 3, 1887, c. 373, § 3, 24 Stat. 554, as amended by Act Aug. 13, 1888, c. 866, § 3, 25 Stat. 436 (U. S. Comp. St. 1901, p. 582), provides that a receiver appointed by a federal court may be sued in respect to any transaction of his in carrying on the business connected with the property of which he is receiver without previous leave of the appointing authority. *Held* that, where a receiver was appointed to operate a railroad, he was only subject to suit without leave under such section concerning matters having their origin in his operation of the railroad, and the act did not authorize the garnishment of funds in his hands alleged to belong to a debtor in the receiver's employ, especially where at the time the garnishment was instituted the amount due the debtor had not been adjudicated and ordered paid so that the receiver could be regarded as holding it merely as the debtor's agent or custodian.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 181.*]

**3.** Receivers (§ 181*)—Attachment.

Receivers appointed by a court of chancery are not subject to attachment in an action at law, since, in the absence of statutory authority, a court of chancery will not permit interference with its operations by proceedings at law.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 181.*]

**4.** Receivers (§ 181*)—Garnishment—Validity.

Where a receiver, appointed by a federal court to operate a railroad, was garnished in an action at law in a state court, such garnishment being a nullity, the receiver incurred no responsibility by ignoring the service and all other subsequent proceedings based thereon.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 181.*]

**5.** Courts (§ 501*)—Federal Courts—Jurisdiction—Contempt.

Where, after the appointment of a receiver to operate a railroad by a federal court, garnishment proceedings were illegally instituted against him without leave in a state court, the court appointing the receiver had jurisdiction to order the dismissal of the garnishment and all proceedings based thereon and to enforce such order by contempt proceedings.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 501.*]

In Equity. Suit by the Central Trust Company of New York, as trustee, against the Wheeling & Lake Erie Railroad Company. Application by B. A. Worthington, as receiver, to restrain Dr. J. C. Dignan and Fritz Rudin, his attorney, from continuing proceedings in a suit in the state courts to subject certain earnings alleged to belong to their judgment debtor, Frank Scott, to the payment of such judgment, and to punish the said Dr. J. C. Dignan and Fritz Rudin for contempt. Granted.

Squire, Sanders & Dempsey, for receiver.
Fritz Rudin, for respondents.

KILLITS, District Judge. On the 12th of December, 1910, Dr. J. C. Dignan brought an action in a justice court of Lorain county against one Frank Scott, to recover the sum of $18 for professional services; the respondent Fritz Rudin being his counsel.

The bill of particulars sets up the allegation that Scott was in the employ of, and had money in the possession of, B. A. Worthington, receiver of the Wheeling & Lake Erie Railroad Company, and an ef-

fort was made to garnish the receiver, who was appointed by this court in this action, with power to operate the railroad.

The receiver made no response as garnishee, but wholly ignored the proceeding. Thereafter Dr. Dignan, with the respondent Rudin as attorney, brought an action before a justice of the peace of said county against Worthington, receiver, on account of the latter's alleged statutory liability as garnishee in failing and refusing to respond to the order to pay in the money supposed to be due Scott. Service of summons in this action was had upon the receiver, who ignored the same, and on the 11th of January, 1911, a judgment against the receiver by default was taken.

Upon the 30th of the same month, proceedings in aid of execution upon the last-named judgment were begun, and an attempt was made to bring in the ticket and freight agent of the receiver at Wellington to respond to the execution, which proceedings were ignored by the receiver.

On the 14th of February, 1911, what the respondents denominate a garnishee liability suit was begun against the ticket agent on account of his failure and refusal to answer the notice in the proceedings in aid of execution.

At this juncture an application was made to this court for a rule on Dignan and his attorney, Rudin, to show cause why they "should not be required to dismiss said action against the ticket agent and cease prosecuting the enterprise in which they are engaged or be held in contempt of this court." An order as prayed for was issued, and the respondents are before the court.

[1] Prior to the act of March 3, 1887, amended by the act of August 13, 1888, a receiver appointed by this court could not be sued in the state court for any purpose without the consent of this court.

[2] The act in question provides (section 3) that:

"A receiver may be sued *in respect of any transaction of his in carrying on the business* connected with such property without previous leave of court by which such receiver was appointed."

And the difficulty which the respondents Dignan and Rudin have gotten into is born of a misconstruction of that statute. They err in assuming that, when they attempted to make the receiver a garnishee in their original action against Scott, they were suing the receiver.

It is fundamental that a receiver is not subject to attachment or garnishment as to funds in his possession without leave of court.

"The receiver's possession being the possession of the court from which he derives his appointment, he is not subject to the process of attachment or garnishment as to funds in his hands or subject to his control, and such process will be regarded as a nullity when directed against him." High on Receivers, § 151.

In Davis v. Gray, 16 Wall. 203, 218, 21 L. Ed. 447, the Supreme Court said:

"Money or property in his hands is in custodia. legis. He has only such power and authority as are given him by the court, and must not exceed the prescribed limits. The court will not * * * permit his possession to be disturbed by force. * * * In such cases the court will vindicate its authority, and, if need be, will punish the offender by fine and imprisonment

for contempt. * * * Where property in the hands of a receiver is claimed by another, the right may be tried by proper issues at law, by a reference to a master, or otherwise, as the court in its discretion may see fit to direct."

We have been referred by respondents to the case of Boylan v. Hines, 62 W. Va. 486, 59 S. E. 503, 13 L. R. A. (N. S.) 757, 125 Am. St. Rep. 983, and especially to the annotation to this case found in 13 L. R. A. (N. S.) 757. We quote this paragraph from the notes as stating what may be assumed to be the established law:

"In the absence of express statutory authority therefor, it is settled law that, in general, funds in custodia legis are not subject to either attachment or garnishment. It is asserted by many courts and text-writers, however, that, after the person who is entitled to a fund has been ascertained, together with the amount to which he is entitled, and an order has been made for payment, the custodian then becomes the agent of such party, and may thereafter be garnished, or the fund in his custody attached."

In this case the situation in which respondents find themselves must be referred to the time when they attempted to garnish the receiver in their action against Scott.

The Circuit Court for the District of Kentucky, in Central Trust Company v. East Tennessee, V. & G. R. Co., 59 Fed. 523, very clearly limits the application of the act of 1887, amended 1888, to actions against the receiver which grow out of acts and transactions in respect to carrying on the operations of the railroad. On page 528 of the opinion the court say:

"The act does not affect suits not having their origin in the operation of the railroad by the receiver. * * * Garnishment proceedings are not suits against the receiver for any act or transaction of his, and such claims must be prosecuted in the manner heretofore settled by order in this cause. Such claims filed with the commissioner appointed to hear them can be thus more speedily and economically determined than by the institution of regular suits."

This opinion has been followed by the Circuit Court of Appeals of this circuit in Comer v. Felton, 61 Fed. 731.

[3] Receivers are appointed by a court in chancery, and an action in attachment is a proceeding at law. It is easy to understand why, in the absence of statutory authority, a court in chancery will not permit its operations to be interfered with by proceedings at law.

[4] It seems very clear to the court that the respondents had no right to drag the receiver, an officer of this court, into the suit they had against Scott, by the ancillary process of garnishment, and the receiver was well within his rights and incurred no responsibility whatever when he ignored the service. The garnishment was a mere nullity, and, in consequence, all subsequent proceedings by the respondents were nullities, so far as they attempted to affect the receivership.

Referring again to the quotation from the annotation in 13 L. R. A. (N. S.) 758, it is not improbable that respondents have failed to notice the distinction between the situation here and that which would, in some jurisdictions, support an exception to the general rule that a receiver cannot be garnished. There was no adjudication, at the time an attempt was made to garnishee the receiver, of an amount due from him to Scott. As to any claim that Scott may have had

upon him, the receiver had had no day in court. Consequently, the situation had not arisen to which may be applied even the exception referred to.

The decision, as we are using it, of the case in 59 Fed., is not, as respondents suggest, mere obiter, but the facts of that case necessarily involve the limitation which the court made of the operation of the act of 1887–88. If it may seem that the point is not in that case, we follow the language of that opinion and so construe and limit the act with direct application to this case.

This is not a case wherein the authorities touching the right of this court to enjoin, offered by respondents, apply.

[5] On the authority of Davis v. Gray, supra, the respondents are subject to the court's control by proceedings for contempt, and it is clearly within the jurisdiction of the court to place an alternative order upon them.

The order of the court, therefore, is that each of the respondents be, and they hereby are, declared to be in contempt of this court, and that they purge themselves thereof by forthwith dismissing the pending proceedings before Justice Binehower, of the township of Wellington, Lorain county, Ohio, and pay the costs of the several proceedings, so far as costs may have therein been attempted to be taxed against the receiver or O. B. Williams, ticket and freight agent of the receiver at Wellington, Ohio, and pay the costs of this proceeding; failing which, such further order will be made herein as the circumstances may require.