# CASES

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1924

---

### A. Kneisel et al., v. Ursus Motor Company. The People of the State of· Illinois, Defendant in Error, v. Leslie A. Gilmore, Plaintiff in Error.

### Gen. No. 29,107.

1. CONTEMPT—*filing of petition by stranger against receiver without leave of court as contempt.* A petition, filed in receivership proceedings by one who was not a party to any of the suits involved, claiming that the receiver had wrongfully obtained possession of some of petitioner's personal property and seeking to recover the same, was, in effect, the beginning of a suit against the receiver to recover property held by it as receiver and, having been filed without leave of the court which appointed the receiver, constituted a direct contempt of that court.

2. RECEIVERS—*when petition by stranger against receiver may not be filed without leave.* The provision of Cahill's Ill. St. ch. 22, ¶ 53, that a receiver may be sued without leave of the court appointing him "in respect of any act or transaction of his in carrying on the business connected with such property" has no application to suits or proceedings brought to enforce any claim of title to property in the custody of a receiver.

3. VENUE—*petition filed without leave by stranger to receivership insufficient to entitle petitioner to right to petition for change of venue.* One who was not a party to any of the suits involved in a receivership had no standing to petition for a change of venue

(371)

until an intervening petition in one or more of the suits had been filed with leave of the court, and where such an intervening petition was filed without leave the attorney so filing it was guilty of a direct contempt of the court and the fact that he asked for a change of venue as soon as he presented it did not excuse or palliate his act in filing it without leave.

4. CONTEMPT—*when petition filed without leave in receivership constitutes contempt.* When an attorney prepared and filed in a receivership proceeding, without leave, a petition containing, in addition to alleged facts regarding his client's property, irrelevant and impertinent matter consisting of gratuitous and venomous charges against the judge to whom the petition must necessarily be presented, the conclusion is that a deliberate affront was intended and it constituted a contempt of court the same as if the statements had been made orally in open court.

5. CONTEMPT—*failure to punish associate in contempt as excuse.* An attorney who was sentenced for a direct contempt of court cannot complain because his associate in the matter was not also punished.

Error by defendant to the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1924. Affirmed. Opinion filed October 7, 1924.

LESLIE A. GILMORE, Contemner-Attorney, *pro se,* for plaintiff in error; FRANCIS W. WALKER, of counsel.

ROBERT E. CROWE, for defendant in error; ANGUS ROY SHANNON, of counsel.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

This writ of error brings up for review an order of the circuit court of Cook county, by the terms of which Leslie A. Gilmore, an attorney, is adjudged guilty of contempt of court, fined $100, and committed to the county jail for seven days.

The order was entered in one of 298 suits in equity pending in the circuit court, in each of which one Jacob Goldman was originally appointed receiver and afterwards removed and the Chicago Title & Trust

Company appointed. The order sets forth at great length a series of facts which the court finds are "among facts of which it takes judicial notice, and facts which appear of record, and facts and circumstances within the personal knowledge of the judge of this court, adduced in the hearings before him of the Jacob Goldman receivership matters." From the facts thus recited by the court it appears that in March, 1923, it became known that Goldman was "grossly insolvent," and had "commingled the assets and intermixed the expenditures in all of said causes * * * and with his personal affairs"; that the "confusion and wrongs" resulting from that condition "created an emergency and a situation *sui generis*," requiring the exercise of the "plenary powers" of the court; whereupon, all of said suits had been transferred from and by the judges respectively before whom they were pending to the executive committee of the judges for reassignment under the rules of the court (which are set out in full), and such committee had placed all of said causes on one special calendar and assigned Judge Kickham Scanlan to hear the same; that the condition of Goldman's accounts was found to be such that "it became necessary to the discovery and recovery of assets" that "an inquisition and search therefor should be made, which has been and still is being held and conducted" by Judge Scanlan, whereby "over $100,000 worth of assets" had been "discovered and recovered"; that the defendant Gilmore represented Goldman in several of said suits and was present in the court of said judge "during most of the hearings on the aforesaid search for assets" and had personal knowledge of all that transpired there, and had advised said judge that he and Francis W. Walker were the attorneys for said Goldman and Ida Goldman, his wife, "in certain criminal proceedings" then pending in the criminal court; that on October 5, 1923, the executive committee en-

tered an order in which, after reciting that it appeared from the evidence heard by Judge Scanlan that Goldman's affairs were so involved that the rights of all parties required that one judge should consider and determine all matters in all said suits relating to the collection and distribution of assets and the adjustment of liabilities, it was ordered that if a petition for a change of venue should be presented and allowed in any of said suits, or if any of them should be transferred from Judge Scanlan, ''jurisdiction over the matters above recited and the administration of the receivership estates in each and all of such causes shall be retained for final determination by Judge Scanlan''; that Ida Goldman was not a party to any of said suits, yet ''on October 26, 1923, without any leave of court first moved or ordered, there was filed in the office of the clerk of this court the petition * * * of the said Ida Goldman,'' entitled in this cause, ''with the aforesaid Leslie A. Gilmore and Francis W. Walker appearing as her attorneys,'' which petition is copied *verbatim* into the contempt order.

Said petition is signed by Ida Goldman, is directed ''To the Honorable Judges of the Circuit Court of Cook County,'' and represents that she is the wife of Jacob Goldman and the mother of Harold Goldman; that she is the owner of certain jewelry (describing the same) which she had bought with her own savings; that in April, 1923, upon the statement of her son that his father had sent him to get this jewelry, she had turned it over to him, and the son, without her knowledge or consent, had delivered the same to a man who ''surrendered said jewelry to his Honor, Judge Kickham Scanlan, in open court,'' and it was now in possession of the Chicago Title & Trust Company, as receiver, of whom she has demanded the same and which demand was refused; that at another time, she delivered $1,500 of her own money to her

son for the purpose of defraying the expense of procuring a bond for the release of her husband from the county jail, but that "said Judge Kickham Scanlan, by intimidation and threat, took the said sum of money from Thomas Wood, to whom the same had been entrusted by her said son Harold for uses as aforesaid in the liberation of her said husband," and turned it over to the Trust Company as receiver, where it now is; that said money was so taken without her knowledge or consent and that the same should be returned to her; that she also had some household furniture in a storage warehouse and Judge Scanlan entered an order restraining the warehouse keeper from delivering it to her; that these acts and orders of Judge Scanlan were wrongful and oppressive and without authority of law, were void for want of jurisdiction over her or her property, and should be set aside and her property returned "by the decree and order of this court"; that after thus taking from her the custody of her money and jewels, and "well knowing that she was the wife of Jacob Goldman, with whom she lived, and of her right to take from her said husband gifts of money or jewels," and "that her receipt and custody of the same would not and could not commit her to the crime of receiving stolen property," said judge appeared before the grand jury and "so related matters and things against your petitioner" as to induce the grand jury to return an indictment against her for receiving stolen property which, as alleged in the indictment, consisted of "certain checks," without naming the maker or payee or the owner thereof; and likewise induced the grand jury to return six indictments against her husband charging him with embezzlement and larceny, "while yet the said Judge Kickham Scanlan knew that said Jacob Goldman had not before then been adjudged, on any final report or account, to have or hold any sum of money or property in any of said pending

causes, which money or property he had been ad-
judged and ordered to pay over and deliver to any per-
son adjudged to be entitled thereto in any of said
causes," and had not made default in the payment of
any money or property upon any order for such pay-
ment; "And so it is, may it please your Honors, that
said Judge Scanlan, who heretofore has been espe-
cially designated by the Executive Committee of this
Honorable court to hear the matters in controversy
* * * in said causes * * * has so far manifested
his bias, prejudice and animosity" against the peti-
tioner and her husband "that he is not a fit and proper
person to preside at the hearing of any matter con-
cerning the right and interest of your petitioner," and
that "this Honorable court should safeguard . * * *
her property rights and interest as hereinbefore set
forth by directing and ordering a hearing on this,
her petition, by some chancellor of the court who will
accord her a just, fair and impartial hearing";
wherefore, she prays that her petition be referred "to
some impartial chancellor of this court" to be heard
and considered, and that a rule be entered upon the
Trust Company, as receiver, to answer such petition
and to show cause, if it can, why her money and jewels
should not be restored to her and why the order re-
straining her from taking possession of her house-
hold effects in the storage warehouse should not be
set aside. This petition is verified by Ida Goldman,
and the names of Francis W. Walker and Leslie A.
Gilmore appear at the left of her signature as her
attorneys.

After thus reciting the filing and the contents of the
petition of Ida Goldman, the contempt order further
states that on October 27, 1923, Gilmore and Walker
"appeared before this judge, in open court"; that
Gilmore then said "that he and his coattorney filed
said petition" the day before "and he then and there
presented to this judge that aforesaid petition of Ida

Goldman, including the filing marks thereon contained,'' and said that ''after filing the same, he and his coattorney'' took it to the executive committee to have it assigned to some other judge, but the chief justice told them ''they must appear before this judge on any matter entitled therein,'' that accordingly they were presenting it ''to this judge,'' and at the same time were presenting the application of Ida Goldman for a change of venue in the matter of the hearing on said petition; whereupon the consideration of these matters was taken under advisement; that on November 1, 1923, said petition of Ida Goldman was stricken from the files. The order concludes with a formal finding and judgment committing Gilmore for contempt. The finding is that his ''acts and doings'' as set forth in the order, and the ''nature and allegations'' of the petition of Ida Goldman, were calculated and intended ''to embarass and obstruct this court and this judge hereof in the hearing of this cause and in the administration of justice'' and constitute direct contempt of the circuit court of Cook county.

Defendant first contends that Ida Goldman—and he, as her solicitor—had the right to file her petition without asking or obtaining leave of court to do so. She was not a party to the suit in which her petition was entitled and filed, or to any other of the 298 suits then pending before Judge Scanlan. She was an outsider who claimed the receiver had wrongfully obtained possession of some of her personal property and she sought by her petition to recover such property. Her petition prays, in part, that the receiver be ruled to answer it and to show cause, if it can, why her property should not be returned to her. In effect, therefore, the filing of her petition was the beginning of a suit against the receiver to recover from it some of the property held by it as receiver. It has been uniformly held that the institution of such a suit or proceeding without leave of the court appointing the

receiver is a direct contempt of that court. (*Richards v. People,* 81 Ill. 551; *Phillips v. Webster,* 85 Ill. 146, 149; *Sercomb v. Catlin,* 128 Ill. 556, 561; *Mulcahey v. Strauss,* 151 Ill. 70; *St. Louis, A. & S. R. Co. v. Hamilton,* 158 Ill. 366, 368.)

In *Richards v. People, supra,* this rule and the reason for it is stated as follows: ''It is to be remembered that the receiver is the officer of the court and that his possession is the possession of the court itself; and any unauthorized interference therewith, either by taking forcible possession of the property committed to his charge or by legal proceedings for that purpose, without the sanction of the court appointing him, is a direct and immediate contempt of court.'' This is a well-established general rule. (23 R. C. L., sec. 70.) ''After the appointment of a receiver, claimants of the property or any interest therein may enforce their claims only by permission of the court appointing the receiver.'' (23 R. C. L., sec. 59.)

But defendant says that this general rule has been changed in this State by statute so that it is no longer necessary to have leave of court before beginning a suit against a receiver. This is only true as to a limited class of proceedings specified in the statute, and the petition under consideration does not fall within that class. The statute cited is found in Cahill's Ill. St., ch. 22, ¶ 53. It was enacted in 1913 and provides that every receiver of property appointed by any court in this State may be sued without leave of such court ''in respect of any act or transaction of his in carrying on the business connected with such property.'' The mere reading of the quoted language would seem to be sufficient to show that this statute has no application to suits or proceedings brought to enforce any claim of title to property in the custody of a receiver. By its express terms the act purports to apply only to suits or proceedings against a receiver

relating to some "act or transaction of his" done or performed while he is engaged "in carrying on the business connected with the property" of which he was appointed receiver. The statute is copied almost *verbatim* from a federal statute (section 66, Judicial Code, 5 Fed. Stat. Ann. — 2d ed. — 541), which the federal courts have repeatedly held gives no right, without first obtaining leave, to bring any suit or proceeding affecting the custody of property in the hands of a federal receiver. (*American Loan & Trust Co. v. Central Vermont R. Co.*, 84 Fed. 917; *In re Kalb & Berger Mfg. Co.*, 165 Fed. 895; *Buckhannon & N. R. Co. v. Davis*, 135 Fed. 707; *Love v. Louisville & E. R. Co.*, 178 Fed. 507; *Central Trust Co. v. Wheeling & L. E. R. Co.*, 189 Fed. 82. See also, *McNulta v. Lockridge*, 137 Ill. 270, 288.)

Defendant further contends that his act, and that of his associate counsel, in presenting their client's petition to Judge Scanlan, with the request that it be assigned to some other judge to be heard, did not and could not constitute contempt of court, for the reason that Mrs. Goldman had the statutory right to petition for a change of venue, and that defendant and his associate, as her counsel, had the right to present her petition for such change. This contention assumes that there was some matter then pending before Judge Scanlan concerning which Mrs. Goldman was then entitled under the statute to a change of venue. As she was not a party to any suit or proceeding then pending before that judge, it was necessary, before she could be entitled to a change of venue upon the ground of the prejudice of the judge, to file her intervening petition in some one or more of the suits pending before that judge. Neither she nor her counsel had the right to file such a petition without leave; and as no such leave had been obtained, it follows that she was not then in a position to ask or be entitled to a change of venue. When the petition was presented by de-

fendant it had been filed in the clerk's office without leave, and bore the title of a suit then pending before Judge Scanlan who had personal knowledge of the fact that no leave to file it had been asked or obtained. Defendant's name was on it as solicitor for the petitioner, and presumably he prepared and filed it. When he admitted in open court that such was the fact, he assumed full responsibility for filing it without leave. The fact that he asked for a change of venue as soon as he presented it gave him no right to file the intervening petition, and did not excuse or palliate his act in filing it without leave.

From what we have said it will appear that in our opinion the court was justified in finding defendant guilty of contempt regardless of the fact that Mrs. Goldman's petition, by innuendo at least, charges Judge Scanlan with high-handed methods and improper conduct in the Jacob Goldman receivership matters. However, to make statements reflecting on the personal integrity of a judge in a suit that is pending before such judge is contempt of court (*People v. Gilbert,* 281 Ill. 619, 631), and it was wholly unnecessary for Mrs. Goldman to make such statements, even if she supposed it was incumbent upon her, in order to obtain a change of venue from Judge Scanlan, to support by alleged facts her assertion that Judge Scanlan was prejudiced against her and her husband. If she had been content to state in her petition her claim to the property mentioned and the manner in which it came into the possession of the receiver, and to ask in a respectful manner that it be returned to her, leave to file such a petition would doubtless have been granted as a matter of course; after which she would have been in a position to apply, in accordance with the statute, for a change of venue from Judge Scanlan. We cannot assume, and defendant does not claim, that he was not fully aware of the correct practice in this respect. When, therefore, he prepared and

filed, without leave, a petition containing, in addition to alleged facts regarding his client's property, gratuitous and venomous charges against the judge to whom the petition must necessarily be presented, the conclusion is irresistible that a deliberate affront was intended. To insert such irrelevant and impertinent matter in a pleading presented to the court was a direct contempt, precisely the same as if the same statements had been made to the judge orally in open court. (*Kerr v. State,* — Ind. —, 141 N. E. 308.)

After the contempt order was entered, defendant filed a long written motion to "amend and clarify" such order on the basis of affidavits submitted by him and his associate. The motion was denied, and error is assigned on that ruling. We have considered the arguments on this point advanced by defendant and are unable to see any force in them. For the most part, the affidavits refer to immaterial matters, such as that his associate counsel, and not he, did the talking when the petition was presented to Judge Scanlan, from which it is argued that he too should have been punished. It is elementary that one cannot complain of an alleged error which does not affect him.

The order of the circuit court is affirmed.

*Affirmed.*

BARNES and GRIDLEY, JJ., concur.