## COMER v. FELTON.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1894.)

No. 135.

1. WRIT OF ASSISTANCE—AGAINST WHOM ISSUED.
    A writ of assistance should not issue against one who is not a party to the suit, and who did not enter pendente lite.
2. RECEIVERS—CONTROVERSY REGARDING POSSESSION OF PROPERTY.
    Property leased by one railroad company to another, and in possession of a receiver of an assignee of the lessee, was claimed by the receiver of the lessor on the ground that the lease had been terminated by notice by the lessor. *Held*, that the court which appointed both receivers had jurisdiction of a proceeding for determination of the controversy, either by an independent bill or by petition.

3. SAME—PROPERTY IN POSSESSION OF LICENSEE.
    Property of a corporation in possession of a licensee at the time of the
appointment of a receiver for the corporation passes to the receiver,
subject to the rights of the licensee, and, on the termination of the
license, the receiver is entitled to possession.

4. SAME—JUDGMENT AFFECTING RIGHT OF POSSESSION—RES JUDICATA.
    Where an action of unlawful detainer is brought before a justice of the
peace for property in possession of a receiver without leave of court, a
judgment for defendant, being null and void, is not available to the
receiver as a defense to a subsequent proceeding to obtain possession of
the same property.

5. EQUITABLE ESTOPPEL—RELIANCE ON ERRONEOUS STATEMENT — REVOCATION
    OF LICENSE.
    A license by one railroad company to another to use certain depot
grounds provided for its termination on two years' notice by the licensor.
Soon after such notice had been given, the licensee assigned its rights
to another company, for which, subsequently, a receiver was appointed;
whereupon the licensor wrote said receiver a letter, informing him of
the notice of termination of the license, referring thereto as of a date a
year later than its actual service, and inclosing a copy of the notice, not
dated. An attentive reading of the letter would have indicated to the
receiver that there was some mistake as to the date of notice. Held, that
the licensor was not thereby estopped to claim the property on the expira-
tion of the notice, in the absence of evidence that the receiver relied on
the statement of the letter, and was injuriously misled thereby, notwith-
standing averments to that effect in his answer, not responsive to the
allegations of the licensor's pleading.

Appeal from the Circuit Court of the United States for the East-
ern District of Tennessee.

The appellee, S. M. Felton, is receiver for the Cincinnati, New Orleans &
Texas Pacific Railway Company, hereafter designated as the Cincinnati Rail-
way Company. The appellant, H. M. Comer, is receiver for the Central Rail-
road & Banking Company of Georgia, a corporation hereafter designated as
the Central Railroad; and for the Savannah & Western Railroad, a corporation
hereafter designated as the Savannah Railroad. This controversy is between
Felton, as receiver for the Cincinnati Railway Company, and Comer, as
receiver for the Savannah Railroad Company. The subject-matter of the con-
troversy concerns certain depot grounds and terminal facilities in the city of
Chattanooga, now in possession of Comer, as receiver for the Savannah Rail-
road. The premises involved belong in fee to a railway company known as
the Cincinnati Southern Railroad. That company leased its line and depot
properties to the Cincinnati Railway Company, for which Felton is receiver.
The Cincinnati Railway Company subsequently, and by a contract in writing,
subleased the premises in controversy to a railway company operating a line
between Chattanooga, Tenn., and Columbus, Ga., and known as the Chatta-
nooga, Rome & Columbus Railroad Company, and hereafter designated as the
Chattanooga Railroad Company. This latter company subsequently sold its
line of railroad, and leasehold interest in the premises, to the Savannah Rail-
road Company, of which Comer is receiver. After the Cincinnati Railway
Company had leased the res in controversy, it became insolvent, and under
a bill filed by Samuel Thomas, a creditor, in the United States circuit court
at Chattanooga, Tenn. (as well as in the circuit courts of other districts
through which its line extended), it was placed in the hands of S. M. Felton,
as receiver. The Savannah Railroad Company, under a like bill filed in the
same court, and after it had by assignment acquired the leasehold interest
of the Chattanooga Railroad Company in the depot grounds in question, was
placed in the hands of H. M. Comer, as receiver. Receiver Felton, under a
power of revocation contained in the contract of leasing, gave notice to the
president of the Chattanooga Railroad Company of the termination of the
license extended to that company under its contract with the Cincinnati Rail-
way Company.

The essential parts of that contract were as follows: "Whereas, the Chattanooga, Rome & Columbus Railroad Company, a corporation of Georgia, hereinafter known as the licensee, is desirous of constructing and maintaining, at its own expense, turntables, switching and side tracks, a connecting track with the Cincinnati Southern Railway, and appurtenances thereto, to be used in its business, in the city of Chattanooga, Tennessee, on lands hereinafter described, leased and controlled by the Cincinnati, New Orleans & Texas Pacific Railway Company, hereinafter known as the licensor: These presents witness, that said licensor has granted to said licensee the following revocable and determinable license, with the following privilege, viz.: To construct and maintain such turntables, switching and side tracks, and appurtenances thereto, as may be necessary in the conduct of its business; and a connection track with said licensor's railroad track, on the lands in the city of Chattanooga, county of Hamilton, state of Tennessee, leased to and controlled by said licensor, bounded and described as follows: * * *. And to have ingress, egress, and regress to and from the same, for the purpose aforesaid, and to use the said premises for the use of said structures, said license being granted upon the following conditions, viz.: * * * That the rights and privileges hereby granted shall cease and determine upon two years' notice in writing being given by the president of said licensor. That after notice has been given of the revocation of this license by the president of said licensor, all tracks and structures placed on said premises shall be removed without any cost to said licensor within thirty days after the date of the expiration of the said notice of revocation."

The notice given by Felton was served March 26, 1891, and its operation was to fix March 26, 1893, as the termination of the privileges enjoyed under the contract. At the date this notice was given the Chattanooga Railroad Company was in possession of its line of road and of the premises in controversy, the sale to the Savannah Railroad Company not occurring until May, 1891. On June 16, 1892, Felton, as receiver, wrote to Receiver Comer, who had, after the notice of revocation, gone into possession as receiver, the following letter:

"Cincinnati, O., June 16, 1892.

"H. M. Comer, Esq., Chairman Board of Directors, Receivers, Savannah, Ga.—Dear Sir: There have been so many changes in the management of the Chattanooga, Rome & Columbus road, and of the Central R. R. & B. Co., in the last two years, that I beg to inclose you a notice served on the former company on March 26th last, which may not have reached you. Of course this letter is not sent on account of any obligation to renew the notice, but merely as a matter of courtesy.

"Yours, truly,                                              S. M. Felton, President."

The notice inclosed in above letter was as follows:

"The Chattanooga, Rome & Columbus Railroad Co., Chattanooga, Tenn.—Gentlemen: Whereas, on the 1st of December, 1887, the Cincinnati, New Orleans & Texas Pacific Railway Company granted to the Chattanooga, Rome & Columbus Railroad Company a revocable and determinable license, authorizing the construction and maintenance of turntables, switching and side-tracks, and appurtenances thereto, as might be necessary in the conduct of the business of the Chattanooga, Rome & Columbus Railroad Company, and the connection track, on lands in the city of Chattanooga, county of Hamilton and state of Tennessee, fully described in said license; and whereas, said license provided that the rights and privileges therein granted should cease and terminate upon two years' notice in writing being given by the president of said licensor; and whereas, the Cincinnati, New Orleans & Texas Pacific Railway Company, licensor therein, is desirous of revoking and terminating the said rights and privileges: Now, therefore, I, Samuel M. Felton, president of the Cincinnati, New Orleans & Texas Pacific Railway Company, licensor in the aforesaid license, do hereby give you this notice of the revocation of said license, and require you to remove all tracks, structures, and other things placed on said premises, without any cost to said Cincinnati, New Orleans & Texas Pacific Railway Company, within the time named therefor in the said license.

"[Signed]                                                   Samuel M. Felton."

Upon the expiration of the license, Felton demanded possession · of the premises, and was refused. He then unadvisedly instituted an action of unlawful detainer before a justice of the peace, for the purpose of dispossessing Receiver Comer. The justice found for the defendant. Thereupon Felton, as receiver, filed the orignal pleading in this cause, as a petition in the case of Samuel Thomas v. The Cincinnati, New Orleans & Texas Pacific Railway Company, against H. M. Comer, as receiver for the Savannah & Western Railroad Company. In that petition he set out his appointment as receiver under a decree in the pending cause, and the appointment of Comer under decree of the same court in a like pending cause, and substantially stated the nature of the claim he asserted to the premises in dispute. The petition prayed for the issuance of a writ of assistance to put him in possession as receiver, or, if the court thought that not the proper remedy, that the court would order its officer and agent, H. M. Comer, to surrender to him the possession of the grounds in controversy. Notice was given counsel for Comer that, on the day named, application would be made for a writ of assistance.

A demurrer was interposed and overruled. An answer was then filed, and a reference made to the clerk to report as to the notice of revocation. Upon the pleadings, report, and evidence, the circuit court ordered that Receiver Comer vacate the premises, and surrender possession to Receiver Felton. From this order, Comer has appealed.

The first error assigned is as to the decree overruling the demurrer. The demurrer was as follows: "Because there is no equity on the face of said petition so far as it seeks a writ of assistance against this defendant in said cause, in that your defendant is shown to have been in possession of said terminal grounds and rights under a valid and undetermined license contract at the time petitioner was appointed receiver for said defendant company, and the decree entered on which the said writ of assistance is sought in this petition; and your defendant, H. M. Comer, was not a party to said proceedings. (2) Because the decree entered in said cause appointing said petitioner receiver of C., N. O. & T. P. Ry. Co.. does not direct the property held by your demurrant to be delivered to petitioner, and is not against your demurrant, but only against the defendant in said cause, the Cincinnati, New Orleans & Texas Pacific Railway Company, and that said company only turn over such property as it then held and possessed. Wherefore, for these and other sufficient reasons, apparent on face of said petition, your demurrant prays for judgment on said demurrer that said petition be dismissed."

Barr & McAdoo, for appellant.

Lewis Shepherd, for appellee.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

LURTON, Circuit Judge (after stating the facts as above). The defendant, Comer, was not made a party to the petition by service of process.· Notice was given to his solicitor that on a day named an application would be made for a writ of assistance. Under this notice he appeared by counsel, and filed the demurrer to the petition heretofore set out. The first ground of demurrer goes to the jurisdiction of the court to grant a writ of assistance to dispossess him by an order made in a cause to which he was not a party. The second ground operated as an appearance and defense to the merits. It questions the order appointing Felton receiver, and insists that it was limited to the property of which the Cincinnati Railway Company was then in possession. If the defense had been confined to the power of the court to order a writ of assistance to dispossess one who had not entered pendente lite, and was not a party to the suit, it would have been well taken

so far as the application was for a technical writ of assistance. The ninth equity rule provides for the issuance of that writ: "When any decree or order is for the delivery of possession, upon proof made by affidavit of a demand and refusal to obey the decree or order, the party prosecuting the same shall be entitled to a writ of assistance from the clerk of the court." At the date of Felton's appointment, the Cincinnati Railway Company was not in possession of the premises. They were then rightfully possessed by its licensee. "This writ is often used to put into possession receivers and sequestrators. It is not issued without an order for that purpose. * * * It is a writ commanding the marshal to eject the defendant from the land, and put the plaintiff in possession, and is executed in the same manner as a writ of habere facias possessionem is executed in favor of a successful plaintiff in the action of ejectment." Fost. Fed. Pr. § 348. Manifestly, it should not issue against any but a party to the suit in which it is sought, or his privies, or one coming into possession pendente lite. Terrell v. Allison, 21 Wall. 289; Howard v. Railway Co., 101 U. S. 849; Fost. Fed. Pr. § 348.

The petition presented a controversy between two receivers of the same court. The facts stated presented a case of which the court should take jurisdiction. Each was an officer and agent of the same court. The possession of each was the possession of the court. The object of the suit was to present to the court the claim of each, and submit the right of each to the determination of the court. The court appointing a receiver draws to itself all controversies over the res, and will not, without leave, permit any other court to disturb the possession of its receiver. The proper practice would have been to have filed the petition in the cause in which Comer had been appointed receiver, and to have asked an order in that cause requiring the court's receiver to deliver possession of the leased property, the lease having terminated. The demurrer did not raise this question, and we see no jurisdictional error in maintaining the suit, either as an independent bill or as a petition in the cause in which it was filed. The alternative relief sought by the bill was proper relief on the facts stated in the pleadings.

The second ground of demurrer was not well taken. The petitioner had been appointed receiver of all the property rights of the Cincinnati Railway Company. This included its interest in the property in question. While the lease was operative, neither the Cincinnati Railway Company nor its receiver was entitled to the possession. Nevertheless, the property passed to the receiver, subject to the rights of the licensee. The right to terminate the license was a right which might be properly exercised by the receiver, and, upon the termination of the license, his right to possession was perfected.

Having by the second ground of demurrer entered an appearance and pleaded to the merits, the court properly overruled the demurrer and required an answer.

The answer set up two defenses,—res adjudicata and equitable estoppel. Upon the filing of the answer, the court directed the clerk to take proof and report as to when notice of revocation had been given, and upon whom it had been served.

The first defense rests upon the judgment in favor of the defendant in the unlawful detainer suit before a justice of the peace. That action was against one T. B. Ervin; Receiver Comer was not a party. The answer describes Ervin as the master mechanic at the Chattanooga yards and an employe of the respondent as receiver, and, as such, in charge of the premises. Defendant, Comer, is not shown to have entered an appearance or in any way made defense. Waiving the question as to whether suit against a mere servant of the receiver would justify a dispossession of the master, we are of opinion that, if the suit be treated as one against Receiver Comer to dispossess him of the possession as the agent and custodian of the court appointing him, the justice of the peace was wholly without jurisdiction to maintain such a suit. His judgment would have been treated as null and void, and any effort to enforce it by a writ of possession would have been in contempt of the court whose receiver defendant, Comer, was.

The general doctrine has been thus stated by Judge Story, in the second volume of Equity Jurisprudence (section 833a), where it is said, concerning receivers under decrees in equity:

"For his possession is deemed the possession of the court, and the court will not permit itself to be made a suitor in a court of law. The proper and usual mode adopted under such circumstances is for the party claiming an adverse interest to apply to the court to be permitted to come in and be examined pro interesse suo. He is then allowed to go before the master and to state his title, upon which he may in the first instance have the judgment of the master, and ultimately, if necessary, that of the court. And where the question to be tried is a pure matter of title, which can be tried in an ejectment, the court, from a sense of convenience and justice, will generally authorize such a suit to be brought, taking care, however, to protect the possession by giving proper directions."

In Davis v. Gray, 16 Wall. 218, the supreme court on this subject said:

"Money or property in his hands is in custodia legis. He has only such power and authority as are given to him by the court, and must not exceed the prescribed limit. The court will not allow him to be sued touching the property in his charge, nor for any malfeasance to the parties, or otherwise, without its consent; nor will it permit his possession to be disturbed by force, nor violence to be offered to his person while in the discharge of his official duties. In such cases the court will vindicate its authority, and, if need be, will punish the offender by fine and imprisonment for contempt. Where property in the hands of a receiver is claimed by another, the right may be tried by proper issues at law, by reference to a master, or otherwise, as the court in its discretion may see fit to direct."

The act of congress of March 3, 1887, permitting suits against receivers, only permits such suits, without leave of the court, "in respect of any act or transaction of his in carrying on the business connected with such property." Defendant, Comer, had been put in possession of the premises involved by a decree of the circuit court, and a suit instituted in a court of law, without leave of the

court appointing him, was a gross contempt. In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785; Central Trust Co. v. East Tennessee, V. & G. Ry. Co., 59 Fed. 523.

While the justice's judgment is a general finding for the defendant, yet it is probable that he took this view of his jurisdiction, and therefore found for the defendant. But whether this be so or not is immaterial. Any judgment in another court in a suit affecting the receiver's right of possession should be treated as null and void by the court appointing the receiver thus wrongfully impleaded without leave of the court.

The third and last question is one of equitable estoppel. The contract between the two railway companies provided that the license might be terminated by giving two years' notice. That notice was properly and regularly given to the Chattanooga, Rome & Columbus Railroad Company, March 26, 1891. That company was the contracting licensee, and was in possession of the premises at the date notice was given. In May, 1891, that company sold out its road to the Savannah & Western Railroad Company, and assigned specifically all its rights as licensee in the premises in dispute. Subsequently the Savannah & Western Railroad Company became insolvent, and appellant, Comer, was appointed receiver. In view of this change in the possession, the receiver for the C., N. O. & T. P. Railway Company, as a pure act of courtesy, wrote and mailed the letter heretofore set out. A copy of the notice which had been served on the president of the Chattanooga, Rome & Columbus road was inclosed. This copy was not dated. The letter to Comer recites that this notice had been given "March 26th, last." This would refer to March 26, 1892, a year later than the actual service of the notice. The answer avers that the defendant, Comer, had no other notice whatever of any desire to determine said contract than that furnished by the letter of Felton, and that he relied upon the fact stated in that letter as to the date when notice had been given. That, being thus misled, he took no step to provide other terminal facilities in lieu of those engaged under the contract, which, as a result of the date of notice set out in the letter of Felton's, he believed would continue until March 26, 1894. He further averred that, if he was now dispossessed, the business intrusted to his management by the court would be greatly injured.

The report of the clerk covered only two facts: (1) That notice of revocation had been served on the president of the Chattanooga, Rome & Columbus Railroad Company, March 26, 1891; (2) that the letter of June 16, 1892, appended to the answer of defendant, Comer, had been written by Receiver Felton. As to whether Comer had knowledge of the true date of the notice of revocation, or was misled by the date of that notice, as stated in the letter of Felton, the report is silent. No proof was submitted upon either of these questions of fact, and the record is equally barren as to the extent and character of injury to result to the business of the Savannah Company, should Felton be permitted to show the true date of the revocation notice.

Felton's letter on its face is shown not to have been intended as a new notice of revocation. That it was not intended to mislead is equally apparent. He had no motive to deceive, and every motive to deal fairly. The letter was what it purported to be, a mere friendly act of courtesy, wholly voluntary, and intended to advise Comer of a fact which had occurred before he was made receiver and put him on his guard. Did it mislead Comer? The answer avers that it did, and that he had no other knowledge of a purpose to revoke the license than that contained in this letter. As to this the answer cannot be treated as evidence. It is sworn to, but the defense of estoppel is not responsive to any allegation of the petition, and under the well-understood rule of equity pleading is not, on the hearing, to be read as evidence. It operated only to make an issue.

The letter, read with any care, indicates, to one who knew the chain of title under which Comer held, some confusion or mistake as to date of notice. On its face its origin is ascribed to the changes which had occurred in the control of the property of the Chattanooga Railroad Company "within the last two years." It recites that notice had been given to the Chattanooga Railroad Company. That company had sold out its road, and specifically assigned its interest in the terminals involved under the license, to the Savannah Railroad Company, in May, 1891. If, therefore, notice had been given to the Chattanooga Company, it was most probable that it was given to it before it had sold out. No change had occurred in the control of the property since March 26, 1892. These facts, being personally known to Comer, should have caused him to make inquiry as to the date when the notice was given. If this letter had been attentively read, Comer would have discovered that there was some error in the reference to "March last" as the date of notice. Certainly no such presumption as that he has been injuriously misled will be indulged in, in the absence of some further evidence. That he relied upon the statement of the letter as giving the true date of the revocation, and that his nonaction was due to that reliance, are essential to an equitable estoppel. That does not appear, and the decree is therefore affirmed.