MINOT et al. v. MASTIN et al.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1899.)

No. 1,188.

1. RECEIVERS—SUITS AGAINST—NECESSITY OF LEAVE OF COURT.
      A person who desires to make a receiver of a federal court a party to an original bill or action at law relating to property in the custody of the receiver should first obtain leave of the court appointing him, unless the case is clearly one falling within the provisions of 24 Stat. 552, c. 373, § 3,

which permits suits of a certain nature to be brought against such receivers without previous leave.[1]

2. EQUITY—PLEADING—ANCILLARY SUIT.

A pleading filed in a federal court, alleging that such court has possession of certain property, through its receiver, appointed in a pending suit for the settlement of a partnership; that the petitioners are trustees in a mortgage on such property executed by parties to such suit to secure an indebtedness which is past due and unpaid; that they desire to subject the property to the payment of such debt, but are powerless to do so without the court's consent by reason of the receivership, and praying that the possession of the property be surrendered to them for that purpose, or that the property be sold for the satisfaction of the mortgage debt under the supervision of the court,—should be treated as a petition of intervention in the pending suit, especially where, by reason of the citizenship of the parties, the court would be without jurisdiction of an original suit, although the pleading is entitled as a bill in an independent suit, and process is prayed against the parties made defendants, including the receiver.

3. SAME—LEAVE TO FILE PETITION OF INTERVENTION.

In such case, where the petition discloses a clear right in the petitioners to possession of the property as against all parties to the original suit in which the receiver was appointed, the filing of the petition is a matter of right, and it is not demurrable because leave of court to file it was not first obtained.

4. RECEIVERS—DUTY OF PARTIES TO PROSECUTE SUIT WITH DILIGENCE—RIGHTS OF THIRD PERSONS.

When parties to a suit have secured the appointment of a receiver for property in which third persons have an interest, it is incumbent upon them to prosecute the litigation effectively, and without unnecessary delay, and upon the court appointing the receiver to discharge the property from judicial custody at the earliest practicable moment, to the end that it may not be held in such custody at the instance of the suitors to shelter it from the just claims of others.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

On August 16, 1897, Laurence Minot and Charles F. Morse, the appellants, filed a petition or "bill," as they termed it, in the clerk's office of the circuit court of the United States for the Western district of Missouri, against Julia Mastin. Thomas H. Mastin, and Hugh C. Ward, as receiver, the appellees, wherein the appellants alleged, in substance, that on December 31, 1888, John J. Mastin and his wife, Julia Mastin, executed a deed of trust in the nature of a mortgage, by which they conveyed to said appellants, as trustees, a large quantity of real estate situated in Kansas City, Mo., to secure the payment of 150 principal notes in the sum of $1,000 each, and 150 sets of interest notes, each set consisting of 16 notes for the sum of $30 each, all of which notes were executed by John J. Mastin individually, for value received, and bore the same date as the deed of trust; that John J. Mastin died on August 9, 1890, leaving a will. wherein his wife, Julia Mastin, was named as his executrix and sole devisee and legatee; that thereafter default was made in the payment of those interest notes secured by the deed of trust which matured on July 1, 1894, January 1, 1895, and July 1, 1895. and that such default continued until on or about October 20, 1895, when said notes so in default were paid; that default was afterwards made in the payment of the remaining interest notes, being those that matured on January 1, 1896, July 1, 1896, and January 1, 1897, as well as in the payment of all the principal notes secured by said deed of trust which became due on January 1, 1897; that no payments had been made on any of the principal or interest notes secured by the deed of trust which became due as last stated; and that the grantors in said deed of trust had also failed and refused to pay a large sum of money which was due on

[1] For suits by and against receivers of federal court generally, see note to Plow Works v. Finks, 26 C. C. A. 49.

account of taxes, general and special, that had been assessed against the mortgaged property, which the grantors in the deed were obligated to pay. In addition to the foregoing averments, the plaintiffs below further stated in their complaint that on July 21, 1894, the defendant Julia Mastin had commenced a suit against her co-defendant Thomas H. Mastin in the circuit court of the United States for the Western district of Missouri for the purpose of obtaining an accounting and the dissolution of an alleged co-partnership between herself and Thomas H. Mastin that had been formed, as it was claimed, some time during the year 1890, after the death of John J. Mastin; and with reference to said suit the plaintiffs averred that in the bill which had been filed to secure a dissolution of said firm it was charged by the said Julia Mastin that prior to her husband's death he and the said Thomas H. Mastin had been co-partners in the banking and real-estate business under the firm name of John J. Mastin & Co.; that they had accumulated a large amount of property, which they owned jointly; that the assets of said firm at the time of her husband's death consisted largely of real estate situated in the states of Missouri and Kansas, and embraced, among other property, the lands conveyed to said Charles F. Morse and Laurence Minot, as trustees, by the aforesaid deed of trust, which was in fact partnership property at the time of said conveyance, although the title thereto stood in the name of John J. Mastin; that after her husband's death she had succeeded to his interest in the firm of John J. Mastin & Co., and had become a member thereof, and had thereupon intrusted the sole management of its affairs to Thomas H. Mastin, who had failed to conduct the business of the firm properly, and had been guilty of various derelictions of duty. The plaintiffs averred that by means of the aforesaid allegations contained in her bill of complaint the defendant Julia Mastin had succeeded, on July 23, 1894, in inducing the circuit court of the United States for the Western district of Missouri to appoint Hugh C. Ward, one of the appellees, as receiver of all the property and assets of the firm of John J. Mastin & Co., and that under and by virtue of such appointment he had taken possession of all the property of said firm, including the lands comprised in the aforesaid deed of trust, and that since the date of his appointment as such receiver he had continued to hold and manage the same, subject to the direction of the court by which he was appointed. The plaintiffs further represented to the court that, as trustees in the deed of trust executed by John J. Mastin and wife on December 31, 1888, they were desirous of obtaining possession of the lands thereby conveyed to them in trust, to the end that they might sell the same, in pursuance of the power of sale conferred by the deed of trust, for the purpose of liquidating the mortgage debt, but that they had been hindered and obstructed in obtaining possession of the property by reason of its being in the custody of the receiver. They also alleged that the numerous notes which were secured by the deed of trust had been indorsed by the original payee thereof, without recourse, and had been sold, and were then outstanding and unpaid in the hands of various purchasers. They further alleged that the defendants were asserting and pretending that the trustees in the deed of trust had no right to the possession of the property thereby conveyed, for the alleged reason that the right to foreclose the deed of trust was barred by the provisions of a local statute of limitations. In view of the premises the plaintiffs prayed that the court would require its receiver to surrender the possession of the lands conveyed by the deed of trust to their custody, to the end that they might be at liberty to proceed with the foreclosure of the deed of trust, or, if it should appear to the court that it was not expedient to grant such relief, that in lieu thereof it would ascertain the amount which was then due on the notes secured by the deed of trust, and direct a sale of the mortgaged property for the purpose of satisfying the mortgage debt. The complaint concluded with a prayer for a subpœna, which was duly issued and served. The defendants below each filed a plea to the jurisdiction, inasmuch as the complaint showed that Charles F. Morse, one of the plaintiffs, and Thomas H. Mastin and Hugh C. Ward, two of the defendants, were each residents of the state of Missouri. The defendants Ward and Thomas H. Mastin, in their pleas to the jurisdiction, further assigned as a reason why the proceeding should be dismissed that no leave of court had been obtained to make Ward a party thereto in his capacity as receiver. The pleas to the jurisdiction were each overruled after full argument,

and the defendants were required to plead further. The defendants next interposed a demurrer to the complaint, one of the reasons which was assigned for such demurrer being that no leave of court had been obtained to make the receiver a party defendant. The demurrer was sustained, but the privilege was accorded to the plaintiffs of filing an intervening petition in the suit to wind up the partnership estate of John J. Mastin & Co., if they should so elect. The case comes to this court on appeal from the order sustaining the demurrer and dismissing the complaint, the plaintiffs having declined to avail themselves of the privilege accorded to them of filing another petition or complaint.

O. H. Dean (John L. Thorndike, Bradley W. Palmer, and Moorfield Storey, on the brief), for appellants.

L. C. Krauthoff (Frank Hagerman and Wash Adams, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The order of the circuit court sustaining the demurrer to the complaint from which the present appeal was taken recites, in substance, that the demurrer was sustained because no leave of court was asked and obtained to sue Hugh C. Ward, the receiver, before the complaint was lodged by the plaintiffs in the clerk's office, and from other recitals contained in the order it appears that no other questions presented by the demurrer were decided. The record further shows that the action of the trial judge in holding the demurrer to be well taken was founded largely, if not entirely, upon the ground that the pleading to which the demurrer was addressed was not intended as an intervention in a pending suit, but was in reality an original bill, which had been filed by the plaintiffs for the purpose of foreclosing the mortgage executed by John J. Mastin and wife; and that, being a bill of that nature, it could not be entertained, consistently with the rules of procedure in equity, without precedent leave of court, because the mortgaged property was then in custodia legis, being in the hands of a receiver theretofore appointed in the case of Julia Mastin against Thomas H. Mastin. If this view of the case was well founded,—that is to say, if the proceeding instituted by the plaintiffs was, in legal contemplation, an original bill to foreclose a mortgage, and was not an incidental proceeding in the last-mentioned suit to wind up the partnership estate of John J. Mastin & Co.,—it might be conceded that it could not be properly brought without permission first obtained from the court which had possession of the mortgaged property. No rule is better established than that a court having the custody of property through the agency of its receiver will not suffer that possession to be disturbed, either by a levy or sale under process issued by some other court, or by the bringing of an independent suit against its receiver to recover the possession of the res, or to enforce a lien thereon, or to establish any other claim thereto. In view of this rule it follows that, whenever a person desires to make a receiver a party defendant to an original bill or to an action at law, leave should be obtained to that effect from the court which appointed him, unless the case is one which falls clearly within the provisions of the act of congress (24 Stat. 552, c. 373, § 3) which permits suits of a

certain nature to be brought against receivers appointed by the federal courts without such previous leave. Wiswall v. Sampson, 14 How. 52; Barton v. Barbour, 104 U. S. 126–128; Davis v. Gray, 16 Wall. 203–218; In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785; Porter v. Sabin, 149 U. S. 473–479, 13 Sup. Ct. 1008. We think, however, that the trial court was mistaken in assuming that the complaint which is involved in the case at bar was an original bill to foreclose the deed of trust that had been executed by John J. Mastin and wife. The proceeding which was inaugurated by filing that complaint was of a dependent or ancillary character, since the power of the court to entertain it was derived, not from diversity of citizenship as between the parties thereto, or the existence of a federal question, but solely from the jurisdiction which it had already acquired in the pending case of Julia Mastin against Thomas H. Mastin. But for the pendency of that suit, it would have had no semblance of jurisdiction, and the proceeding in question would not have been instituted. The appointment of a receiver in the latter case had deprived the plaintiffs of the power which they would have otherwise possessed to choose a forum in which to assert their rights, and had compelled them to resort to the court in which the complaint was filed for relief which could not be obtained elsewhere. Beyond all controversy, therefore, the suit at bar is of an ancillary or dependent character. We think that it was not only a dependent suit, but that it was in effect, and that it should have been treated by the circuit court simply as, an intervention in the case of Mastin against Mastin. The complaint alleged in proper form the nature and extent of the petitioners' right to certain property then in the custody of the receiver; the pendency of the suit of Mastin against Mastin to liquidate the affairs of John J. Mastin & Co.; the fact that a receiver had been appointed in that suit, who had taken possession of all the partnership assets, including certain property to which the petitioners asserted a superior right by virtue of the deed of trust; the fact that the petitioners desired to subject said property to the payment of the mortgage indebtedness, and were powerless to do so, without the court's consent, because of the existence of the receivership; and it concluded in due form with a prayer that, in view of the premises, the possession of the lands conveyed by the deed of trust might be surrendered to the petitioners. It is manifest, therefore, both from the allegations of the complaint and the prayer for relief, that the primary purpose of the petitioners was to obtain an order directing the receiver to surrender the possession of the mortgaged property to their custody, to the end that, as trustees in the deed of trust, they might administer the same as they deemed best, consistently with the provisions of that instrument. This is the object which is disclosed by certain allegations of the bill, and is also clearly stated in the first prayer for relief; and while the complaint also contained a second prayer that the mortgaged lands might be sold, subject to the supervision of the court, for the satisfaction of the mortgage indebtedness, yet this request was made in the alternative, and indicated a form of relief which was not desired by the petitioners unless the court should refuse to relinquish its hold upon the mortgaged property. We think, therefore, that

neither the second prayer for relief, nor the fact that in its caption the complaint was not entitled in the case of Mastin against Mastin, nor the fact that it concluded with a request for a subpœna, is of sufficient importance to change the inherent nature of the pleading in question, and transform it into an original bill for the foreclosure of a mortgage. When its more essential features are considered, it must be regarded as an intervening petition in a pending cause, which was filed for the purpose of obtaining possession of certain property then in the court's custody, to which the petitioners asserted a paramount right. The trial court should have so regarded it, and acted accordingly.

It is urged, however, that, even though the complaint be regarded as an intervening petition in the case of Mastin against Mastin, and not as an original bill, yet the mere lodgment of the petition in the clerk's office without precedent leave of court rendered it vulnerable to a demurrer, and necessitated a dismissal of the proceeding. We are not able to assent to that conclusion. It may be conceded that when, in a pending case, a receiver is appointed to take possession of property, the court or chancellor by whom the appointment is made is not always bound to permit a third party to file an intervening petition, and become a party to the case, because he asserts some interest in the pending controversy or in the property which is thereby affected. It may be that the interest asserted by the intervener will be wholly unaffected by the proceedings which are liable to be taken in the pending case; or that his rights, whatever they may be, are subordinate to the rights of the parties thereto; or that he is already well represented in the principal case; or that there are other adequate remedies within his reach, and at his disposal, which render it unnecessary to burden the case with the collateral issue which is tendered by the intervener. In cases of the latter sort it is usually held to be discretionary with the court or chancellor to whom an application to intervene is addressed to allow or reject the intervention, and leave to intervene should be obtained. Credits Commutation Co. v. U. S., 62 U. S. App. 728, 34 C. C. A. 12, and 91 Fed. 570; Hamlin v. Trust Co., 47 U. S. App. 422, 427, 24 C. C. A. 271, and 78 Fed. 664; In re Streett, 8 U. S. App. 645, 648, 10 C. C. A. 446, and 62 Fed. 218; Jones & Laughlins v. Sands, 51 U. S. App. 153, 25 C. C. A. 233, and 79 Fed. 913; Ex parte Cutting, 94 U. S. 14. There are other cases, however, where the right of a third party to intervene in a pending case is so imperative, resting, as it does, on grounds of necessity, and the inability of the party to obtain relief by other means, that the right cannot be said to be dependent upon judicial discretion. For example, a court cannot lawfully refuse to permit an intervening petition to be filed when the petitioner shows a title to or a lien upon property in the custody of a receiver, and a present right to its possession, which is superior to any right or title that is or may be asserted by the parties to the suit in which the intervention is filed, and at whose instance a receiver was obtained. The case at bar falls within the class of cases last described. The plaintiffs showed by their intervening petition that they were trustees in a deed of trust or mortgage which was executed by John J. Mastin

and his wife, Julia Mastin, in the lifetime of the former; that the mortgage debt thereby secured was overdue and unpaid, and that under the provisions of the deed of trust they had a paramount lien on the mortgaged property, and a right to the immediate possession thereof, inasmuch as it was only held in judicial custody at the instance and request of the members of the firm of John J. Mastin & Co. for the purpose of aiding in the adjustment of the unsettled affairs of that co-partnership.   We entertain no doubt, therefore, that the plaintiffs had a right to file an intervening complaint in the case of Mastin against Mastin, which was not dependent upon the exercise of any discretionary power vested in the trial court; and, having such right, we are furthermore of opinion that the mere lodgment of the complaint in the clerk's office without precedent leave of court was not sufficient cause for sustaining the demurrer thereto.   If the complaint was not properly entitled by the clerk in the main case, an order should have been made to that effect, since it was, in all of its essential features, a pleading in that case, and not an original bill, as we have heretofore held.   Moreover, if leave of court was a necessary step in the orderly course of procedure, then we perceive no reason why the action of the lower court, when it was held by a different judge, in overruling the pleas to the jurisdiction and directing the defendants to plead further, should not be regarded as sufficient leave to sue the receiver.   In their pleas to the jurisdiction, the receiver and Thomas H. Mastin averred as a reason why their pleas should be sustained that no permission had been obtained to prosecute the action against the receiver in his official capacity, and, as the matter was thus called to the attention of the court, and the pleas were over-ruled, with directions to the defendants to plead to the complaint, we can perceive no substantial reason why such action should not be regarded as tantamount to the necessary leave.   To hold otherwise would be to attach more importance to form than to substance.

In conclusion we deem it necessary to say that the record now before us discloses the singular fact that five years have elapsed since the suit to wind up the partnership estate of John J. Mastin & Co. was instituted, and that during that period no substantial progress has been made in adjusting the accounts between the co-partners, and in bringing that litigation to an end.   So far as the record shows, the issues which were presented by the bill of complaint in that case remain untried, and no steps have been taken to bring them to a trial.   In the meantime, however, a large amount of real property which was incumbered by a mortgage in favor of third parties has remained in judicial custody, by which means the trustees in the mortgage have been deprived of the care, custody, and control of the mortgaged property, and have been rendered powerless to enforce the mortgage lien, although it is clearly superior to any equitable claim which is or can be asserted, either by the creditors of the firm of John J. Mastin & Co. or by the individual members of that firm. It goes without saying that the parties to a suit ought not to be permitted to thus jeopardize the rights of others who are not parties thereto, or to obstruct them in the enforcement of their rights by such dilatory proceedings as appear to have been resorted to in the case at

bar. When a receiver has been appointed to hold property in which third parties have an interest, it is incumbent on the persons who have secured the appointment to prosecute the litigation effectively, and without unnecessary delay; and it is equally incumbent upon a court which has acquired the possession of property through the agency of a receiver to discharge it from judicial custody at the earliest practicable moment, to the end that it may not be held in such custody at the instance of one suitor or suitors to shelter it from the just claims of others. In accordance with these views, the order sustaining the demurrer to the intervening complaint, and the subsequent order dismissing the same, will each be reversed, and the case will be remanded to the circuit court with the following directions, namely: That at the first rule day which shall occur at least 10 days after the mandate is filed the defendants be required to take issue by answer with any allegations of the intervening petition which they may desire to controvert, and to interpose by way of plea or answer any defense to the relief sought which they may elect to interpose, and that, when the issues are thus framed, a period of not exceeding 30 days be allowed for the taking of such testimony as either party may deem essential, and that the case be brought to a hearing upon the merits of the intervening complaint with all convenient speed. And, inasmuch as undue delay has already ensued, it is ordered that a mandate in conformity herewith be issued at the expiration of 10 days after the opinion is filed.