### William Mavor v. The Northern Trust Co.

1. RECEIVER—*Right to, in a Proceeding to Foreclose a Lien for Rent.*— The appointment, in a proceeding to foreclose a lien for rent created by the term of a lease, of a receiver to take possession of the leasehold premises to collect and receive the rents and profits of the same pending the suit, must be determined from the lease itself.

2. SAME—*The Right Under the Lease in This Case.*—The right to the appointment of a receiver to take possession of leased premises and collect the rents and profits of the same, is, in this case, sustained.

Foreclosure of a Lien for Rents, etc.—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed February 19, 1901.

MORAN, MAYER & MEYER, and NEWMAN, NORTHRUP, LEVINSON & BECKER, attorneys for appellant.

DUPEE, JUDAH, WILLARD & WOLFE, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This is an appeal from an interlocutory order appointing a receiver. The case is one for the foreclosure of a

lien, created by the terms of a lease for a long term of years, of certain premises in Chicago.

The bill of complaint and the affidavit hereinafter referred to, which was introduced and read in behalf of the appellant, constituted the only evidence heard by the court on the application for a receiver. The merits of the main case, remaining in the Circuit Court, are not before us. The question here, at this time, is whether the Circuit Court, by its receiver appointed in this case, had the right, under the facts of the case, to take possession of the leasehold premises involved, and collect and receive the rents and profits of the same, pending the suit.

Under the facts disclosed, this right must be determined from the lease itself.

The tenth clause of the lease provides (as quoted from the abstract) " that the lessors shall have a first and valid lien, which is hereby given them, upon the rights and interest of the lessee, under this lease, to secure the payment of any and all moneys at any time to become due to the lessors under the provisions of the lease." Another clause of the lease provides that all of its terms and conditions shall be binding upon the successors and assigns of the parties thereto; and it is alleged in the bill that the Merrimac Building Company, the corporation hereinafter referred to, to whom the lessee assigned the lease, agreed to perform all the covenants of the lease.

The lien thus given by clause 10 of the lease, to the lessor, was not merely upon the right of the lessee to occupy the demised premises, but was also upon the right of the lessee to receive rents from his tenants. It is manifest from the lease that the building to be erected on the land was to be rented by the lessee to others, in part at least, and it follows that his right and interest under the lease, included the right to have and receive rent from such other persons. This right came to the lessee under the lease, or he did not have it at all. It is shown in the case that the rents derivable from the building put upon the land, amount to about $113,000 annually. And, as was held in Webster v.

Nichols, 104 Ill. 160, the right of the lessor to have these rents, "follows as a logical sequence from the right to have a lien upon them."

We regard the said tenth clause of the lease as in legal effect a specific pledge of the rents, by the lessee to the lessors, as security for all moneys to become due to the lessors under the lease. But, contending otherwise, it is urged by the appellant that a receiver will not be appointed *pendente lite* in a proceeding to foreclose a lien, as in this case, unless the person indebted is insolvent and unless the security is inadequate. And we will consider the proposition as applied to the case before us.

Kohlsaat was the original lessee, and he assigned the lease, with the consent of the lessors, to the Merrimac Building Company, which put up the building, and has been in possession up to the time the first receiver was appointed.

The allegations of the bill concerning the company (practically conceded to be true) are, "that the Merrimac Building Company is and for a long time has been insolvent and unable to pay its obligations," and that a bill to foreclose a trust deed given by the building company on the leasehold premises, to secure a large issue of its bonds, had been filed in the Circuit Court by certain of the bondholders, and that a receiver of said leasehold premises had been appointed in that suit. It is also alleged in the bill that various defaults have been made in the payment of the rents which have become due and payable to the appellees, and that there is now due and owing to them "for rents and other moneys, under and by virtue of the terms and conditions of said lease, the sum of more than $140,000;" and that there have been continued defaults in the payment of the rents accruing under said lease ever since the first day of February, 1898 (a period of about two and one-half years prior to the filing of the bill).

We consider that such allegations sufficiently show the insolvency of the Merrimac Building Company, for the purpose of establishing its insolvency as a basis for a receivership, at least.

It is not alleged that Kohlsaat, the original lessee, is insolvent, nor do we think it was necessary to be done. The defaults in the payment of rent complained of, began February 1, 1898. The allegations of the bill show that Kohlsaat assigned the lease to the Merrimac Building Company prior to May 1, 1897, which was about ten months before the defaults complained of began.

The lease provided that no assignment of it should be made by Kohlsaat unless he had performed all of its covenants up to the date of its assignment, and then only by the written consent of the lessors, and it is alleged in the bill that he did assign the lease and that the lessors consented thereto. The lease also contained a provision regarding the effect of its assignment upon the lessee, as follows :

"It is further agreed, that in the event of any assignment by the lessee, after complying with the conditions and covenants set forth in the foregoing, the lessee shall be released by the lessors from all liability under this lease arising after the proper execution and delivery of such assignment."

The provision of the lease, first referred to, that it should not be assigned by Kohlsaat unless he had performed all its covenants up to the date of his assignment, and then only by the lessor's written consent, and the last quoted provision, that in the event of the lease being assigned by Kohlsaat after compliance with his covenants, he should be released from all after-accruing liability under the lease, taken in connection with the allegations of the bill that he had assigned the lease with the consent of the lessors, and that the assignment was made prior to any of the defaults complained of, clearly enough constitute a *prima facie* showing, either by expression or presumption, that Kohlsaat was discharged from all the future accruing claims of the lessors under the lease.

The bill being directed to securing nothing but obligations accruing under the lease after Kohlsaat's assignment of it, we do not think an allegation of his insolvency was necessary.

Coming now to the question of inadequacy of the secu

rity. The rent reserved by the lease for its lifetime of 102 years, ranged from $47,350 per year for the period ending April 30, 1896, to $75,000 per year from and after April 30, 1906, during the entire balance of the term, ending April 30, 1995. The rent for the time at present in controversy, from May 1, 1896, to April 30, 1901, is $57,500 per year. From April 30, 1901, to April 30, 1906, it is at the rate of $65,000, and thereafter at $75,000 per year.

There was at the filing of the bill, according to its allegations, more than $140,000 due to the lessors under the terms and conditions of the lease, and rent is accruing at the rates above specified per year, besides interest on the amount in default. According to an affidavit in the record the gross income at present derived from the building is about $113,000.

The total present annual fixed charges and expenses are placed by the same affiant at $100,275. This included the ground rent at the present rate, but does not, of course, include anything for the subordinate bondholders. There is therefore an apparent net surplus of about $13,000 a year, without taking into account anything for the past defaults of $140,000, and interest thereon; and the fact remains that no rent has been paid since February 1, 1898.

Before that sum, with six per cent interest as the lease provides, can be paid out of the surplus, the annual ground rent will have increased to $65,000 a year in 1901, and to $75,000 a year in 1906, and an increase of from $7,500 to $17,500 be thus added to the burden upon the premises.

It requires but a mathematical computation to demonstrate that the security is, in fact, inadequate. Speculations that the rents of the building may increase can not take the place of existing facts.

We do not regard the estimated value of the building as being $500,000, or any other sum. No matter whether the present estate in the building is in the lessors, subject to the user by the lessee during the term, or what the exact legal relation may be that exists between the lessors and lessee, the building in the present controversy is, in fact, the only

security the lessors have, and its value, measured by its capacity to pay the lessee's obligations to the lessors, as provided by the lease, is plainly unequal to the burden.

Reaching this conclusion, we do not need to discuss the authorities as to what, if anything, will take the place of the general rule that inadequacy of consideration must be shown, in a case of this kind, in order to warrant the appointment of a receiver.

The next point made by the appellant is that the bill does not allege that leave was obtained to sue the American Trust and Savings Bank, the receiver appointed in the suit brought to foreclose the trust deed given to secure the bonds issued by the Merrimac Building Company.

According to the record before us, that suit was begun and that receiver appointed in and by the same court in which this suit was begun and the receiver herein appointed.

The fact that the same court entertained the bill herein, wherein its receiver by a former order in another suit was made a party defendant in his capacity as receiver, and as such appeared on the motion, and resisted the application for the appointment of another and different receiver, and joined in the prayer for an appeal granted to him and others from the order appointing another receiver, affords presumption that leave (if any were necessary under such a state of facts) to sue the receiver was given, or it was at least equivalent to consent by the court having jurisdiction over him, to his being sued. It might be added that the receiver, although appearing in the court below, did not there make the point, and it is not made for him in this court, he not having perfected the appeal prayed by and allowed to him.

The order was in substance appointing Hubbard receiver of the leasehold premises, building, improvements, and rents, issues and profits thereof belonging to the Merrimac Building Company, and to take charge of, lease, let, manage and control the premises, and collect and receive all the rents, issues and profits thereof, under the direction of the court; and that the American Trust and Savings Bank,

receiver of the Merrimac Building Company, appointed by this court, forthwith deliver up and turn over to said Hubbard, receiver, all said leasehold premises and improvements thereon, and then particularly describes the same.

Under the record as presented, the order was right and it is affirmed.