# AMBROSE *v.* BROWN.

EQUITY; RECEIVERS; JOINT-STOCK ASSOCIATIONS; LIMITATION OF ACTIONS; BILLS AND NOTES; COMPUTATION OF TIME; STARE DECISIS; PROMISSORY NOTES.

1. Jurisdiction of the subject-matter of a suit against a receiver for an insolvent joint-stock association who was appointed by the same court as that in which the suit was brought is not affected by the fact that the plaintiff did not obtain leave to sue; especially where, upon demurrer to the bill, the court entered a *nunc pro tunc* order giving leave to sue as of the date of the original bill.

2. Equity may take jurisdiction of a suit to enjoin the receiver of an insolvent joint-stock association from distributing the assets of the stockholders, or applying them to other purposes than payment of the plaintiff's debt, which is evidenced by a note given by the association under a provision in its constitution authorizing its directors to obtain loans and making them a first lien on the assets before distribution to stockholders.

3. The day upon which a note fell due is to be excluded in computing the time allowed by sec. 1265, D. C. Code [31 Stat. at L. 1389, chap. 854], providing that no action shall be brought upon such an obligation after three years from the time when the right to maintain any such action shall have accrued.

4. Where in 1879 the then appellate court of this District laid down a rule for the computation of time in determining whether an action on a promissory note was barred by the statute of limitations, and that rule remained unquestioned until attacked in this court in 1914, this court held that it would be unjust to overrule it, even if the court were disposed to question its soundness.

5. A joint-stock association's note cannot be avoided upon the theory that it was executed without authority by its directors for money borrowed by them to redeem stock, where such redemption was one of the association's express objects, and the directors, before being given express authority to do so, had borrowed money for such purpose, giving notes therefor and reporting the same at the annual meetings of members, who made no objection, and had, by an amendment to the association's constitution, been given express power to make loans for that purpose before the execution of the note in

suit, which was given in part to take up notes executed before the amendment.

No. 2604. Submitted February 3, 1914. Decided March 2, 1914.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia making the claim of plaintiff to the extent of a certain amount as a first lien upon all of the assets of the building association that may come into the hands of the defendant receiver.     *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree establishing an indebtedness of $25,000 against the First Co-operative Building Association of Georgetown, and making it a first lien on all the assets of the association that may come into the possession of the receiver.

July 21, 1911, the bill was filed by S. T. Brown against William E. Ambrose, receiver, and four members of the aforesaid association; the same being an unincorporated joint-stock association, and its members too numerous to be all joined in the suit. The suit is on a note executed by the association, through its president and secretary, on June 20, 1908, payable to the Farmers & Mechanics' Bank of Georgetown one month after date, in the sum of $27,000.

Plaintiff is the holder of said note for a consideration of $25,000 paid to said bank, which indorsed the same to plaintiff without recourse.

The bill further alleges that on June 6, 1908, in a proceeding in the supreme court of the District the defendant, Ambrose, was appointed receiver of the said building association; that as the creditor of said association he is entitled to preference over the claims of plaintiffs in said suit, who sue as members and stockholders thereof. The prayers are that during the pending of the suit the receiver be enjoined from distributing any of the assets among its stockholders or from applying the same to any other purpose than the payment of plaintiff's debt; that

the assets shall by decree of the court be applied to the payment of plaintiff's debt; and for general relief. The receiver, Ambrose, filed a demurrer to the bill, the grounds of which are: 1. Plaintiff has not alleged that he has obtained leave of the court to sue the receiver. 2. The bill shows no ground for equitable relief. 3. The bill does not show that the right of action accrued within three years next preceding the bringing of the suit. 4. No excuse is shown for the delay in bringing the suit. The other defendants failed to answer, and decree *pro confesso* was entered against them.

The demurrer was overruled with leave to the receiver to answer, and it was further ordered that the plaintiff have leave to file his bill against the receiver *nunc pro tunc* as of the 21st day of July, 1911. February 23, the decree *pro confesso* against the other defendants was made final. The answer of the receiver put in issue the allegations of the bill. Plaintiff having died pending the litigation, his executors, William T. Brown and the National Savings & Trust Company, were substituted as plaintiffs by order entered March 25, 1913.

The evidence shows that the association had for years been a borrower of money from the Farmers & Mechanics' Bank of Georgetown. Reports made to the meetings of stockholders show large sums obtained from years to year by its notes discounted with said bank; and that the note sued on was executed to take up other notes that had been given to said bank and renewed from time to time for years previously.

The note was delivered at the time of its execution, was purchased by plaintiffs' testator November 1, 1910, and indorsed to him, and that the same remains unpaid. Article IX. §§ 2 and 3 of the constitution of the association provide for the withdrawal and payment for stock by the directors. Article XII. also provides for the cancelation and withdrawal of stock. On May 31, 1907, there was added to article IX. by amendment, § 4, which reads: "In case the funds of the association are not sufficient to meet the demands for advances or withdrawals, the board of directors are authorized to borrow sufficient funds from time to time to meet such demand, and said loans so made

shall be a lien upon and paid out of the receipts and assets of
the association before distribution among the stockholders."
This amendment, it seems, was adopted on the suggestion of
the said bank in which the deposits of the association were kept,
and to which it was indebted at the time, as the yearly reports
show.   The only indebtedness of the association, beyond claims
that may be due its stockholders, is the note in suit.

*Mr. James S. Easby-Smith* and *Mr. John Lewis Smith* for
the appellant.

*Mr. C. H. Cragin* and *Mr. J. J. Darlington* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the
court:

The foregoing statement of the substance of the pleadings
and evidence is sufficient to show the foundation of the errors
that have been assigned.

1. The first question arises on the point raised by the de-
murrer as to the failure to obtain leave to file the bill against
the receiver, and as to the effect of the *nunc pro tunc* order
granting such leave.

It is conceded that the cause of action is not of the character
on which action may be brought, without leave, by the pro-
visions of sec. 3 of the act of March 3, 1887 (24 Stat. at L.
554, chap. 373, U. S. Comp. Stat. 1901, p. 582).   The con-
tention is that without leave previously granted the court had
no jurisdiction of the suit; and reliance therefor is upon *Barton*
v. *Barbour,* 104 U. S. 126, 131, 26 L. ed. 672, 675.   In that
case the railway company, a Virginia corporation, was operated
by a receiver appointed by a court of that State.

The plaintiff, for an injury received on said railway in Vir-
ginia, brought her action against the receiver in the supreme
court of the District to recover damages.   The receiver filed a
plea to the jurisdiction, alleging the order appointing him re-
ceiver in the State of Virginia, which authorized him to de-

fend all actions against him as receiver, by leave of the court, and providing that he should not be liable personally in conducting the business of the railway company, but that the property in his hands should be chargeable with any claim established in any action against him under leave of the court first had and obtained. The court—Mr. Justice Miller alone dissenting—sustained this plea. Mr. Justice Woods, who delivered the opinion of the court, made this statement: "Our decision upon this question will be limited to the facts of this case, which are that the receiver was appointed by a court of the State of Virginia, and the property in course of administration was in that State; the suit was brought in a court of the District of Columbia, a foreign jurisdiction, and the cause of action was an injury received by plaintiff in the State of Virginia, by reason of the negligence of the defendant while carrying on the business of a railroad, under the orders of the court by which he was appointed. No leave was obtained to bring the suit, and it does not appear that any application was made, either to the receiver or to the court by which he was appointed, to allow and pay the demand of the plaintiff."

Another case cited by the appellant is *Comer* v. *Felton,* 10 C. C. A. 28, 22 U. S. App. 313, 61 Fed. 731, 737. This was a controversy between two receivers involving the right of possession of property. One ground of the defense rested upon the judgment of a justice of the peace rendered in an action of unlawful detainer. This action had been brought against one Erwin, an employee of receiver Comer; the latter was not made a party. The judgment for defendant was held not to be conclusive. In the course of the opinion it was said: "Defendant, Comer, had been put in possession of the premises involved by a decree of the circuit court, and a suit instituted in a court of law, without leave of the court appointing him, was a gross contempt. * * * While the justice's judgment is a general finding for the defendant, yet it is probable that he took this view of his jurisdiction, and therefore found for the defendant. But whether this be so or not is immaterial. Any judgment in another court in a suit affecting the receiver's right

of possession should be treated as null and void by the court appointing the receiver thus wrongfully impleaded without leave of the court."

In the first of those cases there was a plea to the jurisdiction, showing that the subject-matter of the action was an injury received on a railway in the State of Virginia operated by a receiver appointed by an equity court of that State, the effect of a judgment in which would be to establish a claim against the property in the possession and under the administration of another court. In the second case, an action had been brought in a justice's court to recover the possession of property in the custody of an equity court. While the judgment was for the defendant, upon what ground it does not appear, a judgment for the plaintiff would have had the effect to devest the title of the property the possession of which was in the equity court through its officer, the receiver.

The facts of the present case are quite different. There was no interference with the property and no claim of possession. The suit was brought in the same court which had appointed the receiver, and, through him, was administering the affairs of the insolvent corporation. The great weight of State authority supports the proposition that the failure to obtain leave to sue the receiver does not affect the jurisdiction of the court, as to subject-matter, and the jurisdiction of the person of the receiver may be waived; save under the exceptional conditions shown in *Barton* v. *Barbour,* 104 U. S. 126, 131, 26 L. ed. 672, 675, and *Comer* v. *Felton,* 10 C. C. A. 28, 28 U. S. App. 313, 61 Fed. 731, 737. High, Receivers, 4th ed. sec. 254a; *Lyman* v. *Central Vermont R. Co.* 59 Vt. 167, 180, 10 Atl. 346; *Tobias* v. *Tobias,* 51 Ohio St. 519, 38 N. E. 317; *Manker* v. *Phoenix Loan Asso.* 124 Iowa, 341, 343, 100 N. W. 38; *Murray* v. *Etchepare,* 132 Cal. 286, 288, 64 Pac. 282; *Mulcahey* v. *Strauss,* 151 Ill. 70, 80, 37 N. E. 702; *American Steel & Wire Co.* v. *Bearse,* 194 Mass. 596, 600, 80 N. E. 623; *Wilson* v. *Rankin,* 129 N. C. 447, 449, 40 S. E. 310; *Payson* v. *Jacobs,* 38 Wash. 203, 206, 80 Pac. 429.

Particularly is this the case where the suit is in the same

court in which the receivership is depending; there being then no reason for the application of the rule requiring leave to sue. *Ratcliff* v. *Adler,* 71 Ark. 269, 271, 72 S. W. 896; *Jones* v. *Stewart,* — Tenn. —, 61 S. W. 105, 107; *Mavor* v. *Northern Trust Co.* 93 Ill. App. 314, 319; *Fox River Paper Co.* v. *Western Envelope Co.* 109 Ill. App. 393, 399; See also *Minot* v. *Mastin,* 37 C. C. A. 234, 95 Fed. 734.

The same doctrine, substantially, has the sanction of the Supreme Court of the United States, *Jerome* v. *McCarter,* 94 U. S. 734, 737, 24 L. ed. 136, 137. It was there said: "A further objection insisted upon is that while the property was in the charge of a receiver appointed in the suit brought by Sutherland to foreclose the first mortgage, and therefore, as it is said, was *in custodia legis,* this bill was filed without leave of the court. If there could, under any circumstances, be any force in this objection, there is none now. Both suits were brought in the same court; these appellants appeared, answered, and cross-examined witnesses, and made no allegation that the suit had been brought without leave until about a year and a half afterwards. It was then too late. They must be held to have acquiesced; and, if not, leave of the court to commence and prosecute the suit must be presumed after the orders made to facilitate its progress."

The fact that the same court having control of the property in the hands of a receiver entertains the suit would seem to be equivalent to leave to bring it. At any rate as the question had been raised by demurrer, the court, after requiring the receiver to answer, undertook to settle all doubt by granting the leave *nunc pro tunc.* The technical rules relating to such orders, invoked by the appellant, do not apply. The order was not to supply a former one that had been omitted in entering the minutes, but one expressly intended to relate back to the beginning of the suit so as to give sanction thereto, now for then, as the court had the right to do. *Hirshfeld* v. *Kalischer,* 81 Hun, 606, 607, 30 N. Y. Supp. 1027.

It may be remarked that a strict application of the doctrine relied on by the receiver would prevent the court taking juris-

diction of his appeal because he did not obtain express authority of the court to prosecute it at the expense of the estate in administration.

2. The next point is that the facts alleged are not sufficient to confer jurisdiction in equity. Passing by the question whether this be a suit by one member of a partnership association against others to establish a partnership liability, it might be treated as substantially an intervention in, or a proceeding ancillary to, the original receivership proceeding. *Minot* v. *Mastin,* 37 C. C. A. 234, 95 Fed. 734, 739.

The original proceeding was to conserve the assets of the insolvent association and distribute the proceeds among the shareholding members. Section 4 of article IX. gave an express lien upon the assets of the association "before distribution to stockholders," and this suit was brought to establish a claim of the kind declared entitled to such lien.

The assets were in the custody of the court of equity for distribution to stockholders, and the same court had jurisdiction of the claim of the holders of the prior lien. *Case* v. *Beauregard (Case* v. *New Orleans & C. R. Co.)* 101 U. S. 688, 691, 25 L. ed. 1004, 1005.

3. The next point arises on the application of the statute of limitations.

Our statute of limitations provides that no action shall be brought upon an obligation of the kind sued on "after three years from the time when the right to maintain any such action shall have accrued." Code, sec. 1265 [31 Stat. at L. 1389, chap. 854].

The note sued on fell due July 20, 1908; suit was begun July 21, 1911.

In an early case in this District a note was due July 5, 1879, and action thereon was begun July 6, 1882. The statute then in force required action to be brought "within three years ensuing the cause of action, and not after." Held that the action was brought in time. It was said: "If the day on which the cause of action accrued, which in this case was July 6, 1879, is to be included, the action was begun one day too

late; if excluded, it was brought in proper time. Authorities differ on this point, but we prefer the rule followed in New York and Pennsylvania, which excludes the day on which the cause of action accrues, as a point of time after which the limitation ensues. The three years of limitation ensuing the 6th of July, 1879, had not expired when this suit was brought." *Baker v. Ramsburg,* 4 Mackey, 1. In addition to the States named, the same rule prevails in Texas. *Watkins* v. *Willis,* 58 Tex. 521; *Hunter* v. *Lanius,* 82 Tex. 677, 18 S. W. 201.

The maker of the note had all the day of July 20th to pay the note, and the right of action did not accrue until July 21. The suit, as in *Baker* v. *Ramsburg,* supra, was not brought after three years from the time the right of action accrued. That decision, apparently unquestioned until the argument of this case, laid down a rule for the guidance of litigants in all subsequent cases, and it would be unjust to overrule it, even were we disposed to question its soundness.

The suit not being barred by the statute, there are no conditions in the case making the equitable doctrine of laches applicable.

4. The last proposition argued by the appellant is that the note sued on was executed without authority and therefore is not binding upon the association. It appears that for a long series of years the managing officers of the association had been accustomed to borrow money from the Farmers & Mechanics' Bank for the purpose of redeeming stock, which was one of the express objects of the association. When they began to borrow money for this purpose there was no express power to do so. But reports of the execution and discount of notes for this purpose, in very large amounts, had been made yearly to the meetings of members, and received without a word of objection. More than one year before this note was executed, express power to borrow money, and making the loan a first lien on the assets, was conferred by amendment of the articles.

The note was given to take up other notes, some of which, but how many does not distinctly appear, had been executed before the amendment.

Under the circumstances recited, the association had the implied power to borrow money to discharge their pressing obligations, and the action of the officers in exercising that power had been approved from year to year. *Davis* v. *West Saratoga Bldg. Union,* 32 Md. 285, 295 ; *Booth* v. *Robinson,* 55 Md. 419, 456. See also *Creswell* v. *Lanahan,* 101 U. S. 347, 351, 25 L. ed. 853, 854.

Moreover, the express power conferred by amendment of the constitution, a year prior to the execution of the note sued on, was an express ratification of the previous loans.

Perceiving no error in the record of the trial, the decree is affirmed, with costs.                                  *Affirmed.*